---

## THE L. B. X.

(District Court, W. D. Missouri. March 1, 1898.)

1. **FEDERAL COURTS—TERRITORIAL JURISDICTION—ADMIRALTY SUITS.**
   An admiralty suit in personam is a "suit," in the meaning of the act of February 28, 1887, § 4, providing that "all suits" to be brought in the federal courts in Missouri, not of a local nature, shall be brought in the division having jurisdiction over the county where the defendants reside.

**2. ADMIRALTY PROCEEDINGS—SUITS IN PERSONAM AND IN REM.**

When the cause as instituted is one in rem, and the process issued directs the seizure of the res only, the fact that the marshal treats the cause as a personal action, and serves the owner with process in the usual form, does not make the suit one in personam.

**3. SAME.**

The act of February 28, 1887, dividing the Western district of Missouri into four divisions, and establishing district and circuit courts in each division, creates a distinct district, and distinct courts, having all the essential features of a district and a district court as originally created; and such courts are limited in their jurisdiction over proceedings in rem in admiralty to cases in which the res is situated within their territorial limits.

This was a libel in admiralty by the Weber Gas & Gasoline Engine Company against the steamboat L. B. X. The cause was heard on motion by the claimant to dismiss the libel for want of jurisdiction.

Wash. Adams and Chas. B. Adams, for libelant.

S. D. Chamberlin, for claimant.

ADAMS, District Judge. This is a proceeding in admiralty instituted in this court by libelant against the steamboat L. B. X. The prayer of the libel is for the arrest of the vessel, and a monition to any and all persons claiming any interest in her, to the end that libelant may be awarded the amount alleged to be due it for work done and material furnished in her repair. Upon filing of the libel a warrant of arrest was duly issued, commanding the marshal of this district to arrest the vessel, and cause public notice of such arrest to be given by publication in the Kansas City Mail, admonishing and summoning all claimants to the vessel to appear in this court on the 4th Monday (the 25th day) of April, and interpose their claims, if any they had. The marshal, acting under this warrant, made a seizure of the vessel at her home port, at Jefferson City, Mo.; the same being in the Central division of this district. It appears from the return of the marshal that he also delivered a copy of the warrant of arrest and of the libel to Henry Strutman, who is alleged in the libel and in the warrant to be the owner and master of the vessel. Strutman, as such owner, now comes and files a motion in this court to dismiss the libel for the following alleged reasons: (1) Because at the time of its filing and service upon him he resided at Jefferson City, in the county of Cole, in the Central division of this district; and (2) because the vessel at the time of its arrest was at its home port, Jefferson City, and not in any county over which this court, in the Western division of the district, has jurisdiction. Counsel have argued this motion as if the suit were a proceeding in personam. While I do not think they are correct, yet, with a view of answering their argument, and at the same time disclosing historically the legislation which bears on the subject for its appropriate use in disposing of the motion, I have concluded to first treat this suit as a proceeding in personam.

The question raised by the present motion is whether the division of the Western district of Missouri into four subdivisions by the act of congress approved February 28, 1887 (24 Stat. 424), has any effect

on the jurisdiction in admiralty and maritime causes as it existed before such subdivision was made. Section 9 of the judiciary act of September 24, 1789 (1 Stat. 73), provides "that the district courts shall have original cognizance of all civil causes of admiralty and maritime jurisdiction, including seizures," etc., within their respective districts, as well as upon the high seas. By the act of March 16, 1822 (3 Stat. 653), the state of Missouri was made a judicial district, to be known as the "Missouri District," and a district court was established therein. By the act of March 3, 1857 (11 Stat. 197), the Missouri district was divided into two judicial districts, to be known respectively as the "Eastern and Western Districts"; an additional court was created, and the jurisdiction over the state divided between the two courts. By the act of January 21, 1879 (20 Stat. 263), the Western district was divided into two divisions, to be known as the "Eastern and Western Divisions of the Western District of Missouri," and jurisdiction over the former Western district was divided between two courts,—one for each division, as specified by the act. Section 3 of the act provides, in substance, that all civil suits thereafter to be brought in either of said courts shall be brought in the court having jurisdiction over the division in which the defendant resides. By the act of February 28, 1887, supra, the Western district of Missouri is divided into four divisions, to be known respectively as the "St. Joseph, the Western, the Central, and the Southern Divisions." Section 2 specifies the different counties which shall constitute these several divisions. Section 3 in direct terms establishes a district and circuit court in each of the several divisions (except the Southern division, in which the district was by that act alone created), and provides for the holding of two separate terms of the district court in each and every year in each of said divisions, and requires the judge of the Western district of Missouri to hold these several courts. Section 4 provides as follows:

"That hereafter all suits to be brought in the courts of the United States in Missouri, not of a local nature, shall be brought in the division having jurisdiction over the county where the defendants, or either of them, reside, but if there be more than one defendant, and a part of them reside in different divisions or districts of said state, the plaintiff may sue in either division, or either district where one of such defendants resides, and send duplicate writs to the other division or district directed to the marshal of said district."

Section 5, among other things, provides:

"That process issuing out of the courts of either division of said district shall be directed to the marshal of the district in which the division is located, and may be executed by him or his deputies upon the party or parties against whom issued wherever found within his district."

Comparing the language of the act of March 16, 1822, supra, creating the Missouri district, and the court therefor, with the act of February 28, 1887, supra, dividing the Western district into four divisions, and establishing district courts for each division, and defining their respective territorial jurisdictions, it appears that greater particularity is employed in the latter act than in the former. Language is there employed clearly creating separate jurisdictions, and a court for each such jurisdiction, and in terms confining the jurisdiction of each court, so far as personal actions are concerned, to causes

in which the defendant resides within the division where the action is brought. In other words, each of these divisions, and the courts created therein, have all the essential features of a district and a district court as originally created. Taking counsel at their word, and treating this suit as a proceeding in personam against the master or owner of the vessel, as if libelant were proceeding by simple monition, under rule 2 of the admiralty rules, there would, in my opinion, be no jurisdiction over such owner or master. He did not reside within the Western division of the Western district of Missouri, over which this court has jurisdiction. This cause certainly comes within the comprehensive and general term "suit," and according to the requirement of section 4 of the act of February 28, 1887, "all suits" must be brought in the division having jurisdiction over the county where the defendants, or either of them, reside. Different provisions, however, are made in the event the owner may have property or credits within a given district, and resides elsewhere. In such case the libelant, under rule 2 of the admiralty rules, might have secured an order for the attachment of the property, or for the garnishment of debtors to the owner. In re Louisville Underwriters, 134 U. S. 488, 10 Sup. Ct. 587; Cushing v. Laird, 107 U. S. 69, 2 Sup. Ct. 196; Ex parte Devoe Mfg. Co., 108 U. S. 401, 2 Sup. Ct. 894. This process for the attachment of property and garnishment of credits seems to be treated by the authorities as in lieu of personal service in cases where the owner or master cannot be served with process, but may have property or credits within the jurisdiction of the court. Manro v. Almeida, 10 Wheat. 474. The remedies above referred to are applicable to cases in personam only. Whatever may have been the distinction drawn in some of the cases referred to by proctors of libelant, founded upon the rule that a proceeding in admiralty is not a "civil cause," within the meaning of section 9 of the judiciary act of 1789, it is believed that such distinction cannot now be made in a proceeding brought since the passage of the act of February 28, 1887, supra, which provides, as already seen, in terms, that "all suits" (not civil causes only, but all causes of action whatsoever) which parties may desire to institute in any of the courts of the United States (including, of course, the district court in any branches of its jurisdiction) shall be brought in the division having jurisdiction over the county where the defendants, or one of them, reside. If, therefore, this were a proceeding in personam, as argued by counsel, against the owner or master of the vessel, it could not have properly been instituted in this court, but should have been instituted in the district court for the Central division of this district, which has sole jurisdiction over Cole county, in which the owner and master resides.

I do not understand that the foregoing conclusion is at variance with the doctrine of the case In re Louisville Underwriters, supra, relied upon by proctors of libelant. That case simply decides that when a foreign insurance company has, in compliance with the law of Louisiana, appointed an agent at New Orleans, on whom legal process might be served, and when a monition issuing out of the district court for the Eastern district of Louisiana in a suit in personam, in admiralty, was there served upon such agent, it was effective to bring

into that jurisdiction, in a personal action, the insurance company, incorporated in Kentucky. It is also authority for the proposition that a suitor in admiralty is not compelled to resort to the home of the defendant when its goods or credits can be attached in other jurisdictions. The case of The Willamette, 18 C. C. A. 366, 70 Fed. 874, is authority only for the proposition that when a suit in admiralty was commenced in the Western division of the state of Washington, and the owner of the ship lived in the Northern division, and the ship was seized in the Northern division, the owner, as claimant, may waive the objection to the jurisdiction, if any there was. In considering the applicability of that case, it should be observed that the act of congress creating the judicial district of Washington divides it into four divisions, "for the purpose of holding terms of the district court." 26 Stat. 45. If, therefore, the case was otherwise applicable to the question now under consideration its facts might distinguish it from this case.

So it appears that the cases relied upon by the proctors for libelant do not affect the conclusion already reached in this case. If, therefore, this suit could be construed as a suit in personam, inasmuch as the jurisdiction of this court is assailed at the outset, and no waiver thereof made, the motion to dismiss for want of jurisdiction would necessarily be sustained. But in my opinion this is not a suit in personam. It is true, the marshal makes return on the warrant of arrest that he executed it by delivering a copy of the writ and the libel to Henry Strutman, the owner and master of the vessel. This action of the marshal in treating Strutman as a defendant personally interested in the case cannot change the character of the suit itself. The duty of the marshal, under rule 2 of the admiralty rules, was to arrest the vessel, her engines, machinery, etc., and take the same into his custody for safe-keeping, and to cause public notice thereof, and of the time assigned for the return of process and the hearing of the suit, to be given by publication in a newspaper as required by the warrant of arrest. The fact, therefore, that the marshal treated this as a personal action, and served the owner with process in the usual form of such actions, is insignificant. The cause, as instituted, was one in rem. The process issued pursuant to the prayer of the libel was to seize the res only. It already appears that the home port of the vessel was at Jefferson City, within the territorial jurisdiction of the district court for the Central division of the Western district, and that the vessel was not at the time of the institution of the suit, or at the time of the issuance of the process, within the territorial jurisdiction of this court. The marshal, it appears, seized the boat at Jefferson City, and now has her in his custody at that place. The question now remaining for solution is whether, under the facts so disclosed, this court has jurisdiction of this cause, as a suit in rem, and may proceed therewith to a final determination. On this question, also, there is no waiver of the jurisdiction by any persons, claimants to the vessel, or otherwise. On the contrary, the owner of the vessel now appears, under this view of the case, as a claimant challenging the jurisdiction of the court over this vessel. The chronological consideration already had of the legislation creating the courts

—First, of the Western district of Missouri; second, of the Eastern and Western divisions of the Western district of Missouri; and, third, of the St. Joseph, Western, Central, and Southern divisions of the Western district of Missouri, and defining their territorial jurisdictions—is convincing to my mind that the several divisions, and certainly those created by the act of February 28, 1887, supra, were intended by congress to be jurisdictional subdivisions, and that the courts established in them are limited in their jurisdiction over real actions and proceedings in rem to cases where the real estate or the res proceeded against is situated within its territorial limits. As already seen, the act of February 28, 1887, not only divides the Western district into four divisions, but establishes a district and circuit court in each of the several divisions, and particularly confers jurisdiction upon such courts, and limits the same to the counties composing the division. The language of the act of March 16, 1822, supra, creating a judicial district out of the state of Missouri, and establishing a district court therein, is not so clearly expressive of the legislative intent to confine its jurisdiction to the limits of the state as is the more specific language of the act of February 28, 1887, to confine the jurisdiction of the district court for the Western division of the Western district of Missouri to the confines of the several counties composing that division. It is manifest that congress never intended these subdivisions of a district as mere convenient arrangements for holding the courts of the district. This appears from the specific and accurate language employed, which is entirely inconsistent with such intent, and also from the language employed in other acts creating courts for mere convenience. See specially the act of February 24, 1879 (20 Stat. 418), as construed in Logan v. U. S., 144 U. S. 263–297, 12 Sup. Ct. 617. It is true, the act of February 28, 1887, supra, makes no specific provision for jurisdiction over real actions, or proceedings strictly in rem; but considering the familiar satutory rule respecting real actions in state courts, requiring them to be brought in the court of the county where the land is situated; considering also the strict limitations imposed by the act in question, as already observed, with respect to personal actions, and considering especially the manifest purpose of congress to create separate territorial jurisdictions for each court in the several divisions of this district,—I cannot doubt that congress intended that all proceedings in rem, involving a seizure of the res, as well as all real actions of every kind, should be brought in the court of that division having jurisdiction over the territory where the real estate or res might be. Rule 23 of the admiralty rules requires that, if the libel be in rem, the libel shall state that the property or res is within the district. These rules were revised and corrected by the supreme court of the United States, under an act of congress conferring the power, at its December term, 1870. At that time divisions of districts, as they now exist in some of our states, were unknown; and in the light of legislation already referred to creating these divisions, with separate courts, and jurisdiction limited to certain prescribed territory, it is my opinion that the divisions thus made constitute districts, within the true meaning of this rule, and require all suits in admiralty,

in rem, to be brought in the division of the district in which the res is located. The procedure in admiralty has been, from very ancient times, determined by considerations of the demands of trade, and the necessities of those interested in promoting it; and courts have been vested with jurisdiction so as to promote safety and convenience of commerce, and a speedy decision of controversies when delay might often be ruin. Practice and procedure have been adopted in harmony with this general policy, and therefore the supreme court says, in Re Louisville Underwriters, supra:

"To compel suitors in admiralty, when the ship is abroad, and cannot be reached by a libel in rem, to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons, or his goods or credits attached, would not only often put them to great delay, inconvenience, and expense, but would in many cases amount to a denial of justice."

This general policy is not violated by the conclusion reached in this case. No practical difficulty can be experienced in cases like this, arising in a locality where courts are so numerous and accessible, in resorting to the court with jurisdiction over the territory of the home port of the vessel, or where she can be found. I am aware that section 5 of the act of February 28, 1887, supra, provides that process may be executed by the marshal upon the party or parties against whom issued, wherever found within the district itself. This, however, cannot be held to enlarge the jurisdiction of the court as specifically conferred. It means only that process, like writs of execution, contemplated by sections 985, 986, Rev. St., and writs of subpoena, as provided by section 876, which may lawfully reach beyond the territorial jurisdiction of the court issuing it, shall be executed by the marshal. Treating this suit, therefore, as a proceeding in rem, I am constrained to hold that this court has acquired no jurisdiction, and the motion to dismiss must be sustained.