### STEERS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1924.)

No. 6252.

1. **Injunction ⚖➔229—Power to punish is in division of District Court which issued order violated.**

The power to try and punish a person for violation of injunction order in contempt proceedings is in the division of the District Court by which the injunction order was issued, though the acts constituting the contempt were committed in another division.

2. **Courts ⚖➔420—Northern and Eastern Divisions of Eastern District of Missouri held separate and distinct tribunals.**

Under Act Feb. 28, 1887, as amended by Act April 19, 1888, and Act May 14, 1890, and in view of Judicial Code, § 53, the Northern Division of the Eastern District of Missouri is a separate and distinct tribunal from that of the Eastern Division of the Eastern District of Missouri, with separate territorial jurisdiction for each division.

3. **Injunction ⚖➔229—One District Court not empowered to punish for violation of injunction order issued in other district.**

Where injunction order was issued in the Northern Division of the Eastern District of Missouri, and a person was cited for contempt in such district for acts committed therein, he could not, without his consent,

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be adjudged in contempt in the Eastern Division of the Eastern District of Missouri, notwithstanding Act Oct. 15, 1914, § 22 (Comp. St. § 1245b), providing that, when it appears to the District Court or to a judge thereof that there is reasonable ground to believe that a person has been guilty of contempt under section 21 (Comp. St. § 1245a), the court may issue a rule requiring the person to show cause why he should not be punished for contempt, and providing that "if upon or by such return, in the judgment of the court, the alleged contempt be not sufficiently purged, a trial shall be directed at a time and place fixed by the court," since the quoted words do not empower the court to direct a trial in other division of district; the words having reference to a time or place within the division.

4. **Injunction ⊕223(2)—Violation of injunction against combination of employés held to constitute a crime.**

The violation of an injunction restraining certain persons from combining and conspiring to hinder, obstruct, or stop the employés of a railroad in the maintenance, conduct, or operation of the railroad's business, or from compelling, inducing, or attempting to compel or induce by threats, force, violence, etc., the railroad employés to cease the performance of their duties, or refuse to continue in its service, *held* to constitute a crime under Rev. St. Mo. 1919, § 3265.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Oscar Steers was adjudged in contempt, and he brings error. Reversed and remanded, with instructions.

Lewis O'Connor and Berryman Henwood, both of Hannibal, Mo., for plaintiff in error.

Allen Curry, U. S. Atty., and Carroll W. Harlan, Asst. U. S. Atty., both of St. Louis, Mo.

Before KENYON, Circuit Judge, and MUNGER, District Judge.

KENYON, Circuit Judge. The facts in this case are as follows:

July 17, 1922, a temporary writ of injunction was issued by Hon. Jacob Trieber, United States District Judge, in a certain case pending in the Northern Division of the Eastern Judicial District of Missouri, entitled "Chicago, Burlington & Quincy Railroad Company, Complainant, v. International Association of Machinists and Others, Defendants," by the terms of which defendants and all persons combining and conspiring with them were enjoined from interfering with, hindering, obstructing, or stopping the agents, servants or employés of said railroad company in the maintenance, conduct, or operation of its business, or from compelling or inducing, or attempting to compel or induce by threats, force, violence, etc., any persons in the employ of the company to cease performance of their duties, or refuse to continue in its service.

August 15, 1922, the district attorney for the Eastern District of Missouri filed in the office of the clerk of the District Court of the United States in and for the Northern Division of the Eastern Judicial District of Missouri a petition supported by affidavit, asking against Oscar Steers a citation for contempt for violation of the aforementioned injunction. The case was entitled "Criminal Cause No. 539." On the same date an order was issued by Hon. J. W. Woodrough,

Judge, in which he directed that a writ of attachment issue to the marshal of the Eastern District of Missouri, commanding him to arrest Steers, plaintiff in error, and to have him before "this court" at the city of St. Louis, in the state of Missouri, on the 21st day of August, 1922, at 10 o'clock a. m., to show cause why he should not be punished for contempt for the violation of said injunction. In said order the court also refers to the temporary injunction heretofore granted by "this court" on the 17th day of July, 1922.

Plaintiff in error, on August 28, 1922, appeared at St. Louis, in the Eastern, Division of the Eastern District of Missouri, and entered a plea to the jurisdiction of the court, alleging that the court was without jurisdiction to try the issues involved, and that the case was triable in the Northern Division of the Eastern District of Missouri. This plea was overruled on August 28, 1922, and on August 29, 1922, answer was filed.

The case proceeded to trial before a jury in the Eastern Division of the Eastern District of Missouri, and conviction followed.

[1] The injunction order alleged to be violated having been issued by the United States District Court of the Northern Division of the Eastern District of Missouri, that court had the power to try parties in contempt thereof. The alleged disobedient, contemptuous acts complained of were committed in that division of the Eastern District; but, even were they committed in another division, or in another district in the state, the power to try and punish therefor was in the court of said Northern Division. Binkley v. United States (C. C. A.) 282 Fed. 244; McCourtney v. U. S. (C. C. A.) 291 Fed. 497; McGibbony v. Lancaster et al. (C. C. A.) 286 Fed. 129; Dunham v. United States ex rel. Kansas City Southern Ry. Co. (C. C. A.) 289 Fed. 376.

In Re Debs, Petitioner, 158 U. S. 564, 595, 15 Sup. Ct. 900, 910 (39 L. Ed. 1092), the Supreme Court, speaking of contempt, said:

"To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency."

[2] The court of the Northern Division of the Eastern District of Missouri was a separate and distinct tribunal from that of the Eastern Division of said district. As to where trials shall be had in a federal district depends entirely on the legislation upon the subject. Rosencrans v. United States, 165 U. S. 257, 17 Sup. Ct. 302, 41 L. Ed. 708; Post v. United States, 161 U. S. 583, 16 Sup. Ct. 611, 40 L. Ed. 816; Barrett v. United States, 169 U. S. 218, 18 Sup. Ct. 327, 42 L. Ed. 723. The act dividing the district (24 Stat. c. 271, p. 424) provides for the division of the Eastern Judicial District of Missouri into two divisions, the Northern and the Eastern, and provides for courts for each of said divisions, and that the courts for the Northern Division shall be held at Hannibal, Mo. Said act also provides as follows:

"And the said Circuit and District Courts for said divisions shall have the same powers and jurisdiction, with the same right to parties to prosecute appeals and writs of error thereupon, as now pertain to the District and Circuit Courts for said Eastern and Western Judicial Districts." Section 6.

Later Congress amended the act as to the time of holding terms of court in the respective divisions. 25 Stat. c. 129. By chapter 202, 26 Stat., further provision is made as to the holding of said courts. It is apparent from these various acts that the Congress under its constitutional power ordained and established a United States District Court for the Northern Division of the Eastern District of Missouri as a distinct entity from the court of the Eastern Division of said Eastern District of Missouri, and created and fixed separate territorial jurisdiction for each division.

There was no case pending in the Eastern Division of the Eastern District of Missouri covering the matter in question. It was the court of the Northern Division whose order, it is alleged, was disobeyed. The petition for citation was filed in that court, and the citation to attach plaintiff in error issued out of that court. The venue of the action was there. No agreement was ever made to transfer the case to the Eastern Division of the Eastern District.

While the statutes and amendments thereto, herein referred to, with reference to the Northern Division are determinative of the question of jurisdiction involved, it is of interest to note that in 1911 Congress passed an act (section 53, Judicial Code; Comp. St. § 1035) carrying out in a general way what many of the Congressional enactments had specially provided as to various divisions of districts for jurisdictional purposes. We refer to section 53 of the Judicial Code, not as the basis of our holding here that the case should have been tried in the Northern District, but as throwing light on the intention of the Congress that the statutory divisions of districts are to be treated, for territorial jurisdictional purposes, as separate districts. See, also, The L. B. X. (D. C.) 88 Fed. 293; Petri v. Creelman Lumber Co., 199 U. S. 487, 496, 26 Sup. Ct. 133, 50 L. Ed. 281.

This court has held that a criminal contempt proceeding is not such a crime or offense as is referred to in section 53. McCourtney, et al. v. United States (C. C. A.) 291 Fed. 497. The Supreme Court of the United States, in an opinion filed February 18, 1924, in Myers v. United States of America, 44 Sup. Ct. 272, 68 L. Ed. ——, has also so held.

In Dunham v. U. S. ex rel. Kansas City Southern Ry. Co. (C. C.) A.) 289 Fed. 376, the Circuit Court of Appeals of the Fifth Circuit has pointed out very clearly the reasons why section 53 cannot apply to a criminal contempt proceeding, because, if the contempt must be tried where the acts were committed, the court whose order had been contemned would have no power to publish the violation of its orders. We need not, however, enter into a discussion of that question here.

[3, 4] Whether the criminal contempt was a crime, as designated by this court in Creekmore v. United States, 237 Fed. 743, 150 C. C. A. 497, L. R. A. 1917C, 845, or whether it was a quasi crime or offense, or a proceeding in the nature of a criminal proceeding, as said by this court in McCourtney v. United States (C. C. A.) 291 Fed. 497, it was in any event an offense against the court of the Northern Division of the Eastern District of Missouri, and was triable in said Northern Division, unless plaintiff in error consented to trial in the Eastern Division, or unless the so-called Clayton Act changes the situation.

Does it do so? It seems without question that the alleged contemptuous acts would constitute a criminal offense under the laws of Missouri. Section 3265, Revised Statutes of Missouri 1919. Therefore section 1245b, Comp. Stats. (chap. 323, § 22, 38 Stat. 738), would be applicable. Said section provides that, when it appears to the District Court or to a judge thereof by return of a proper officer, or affidavit of some credible person, or by information filed by a district attorney, that there is reasonable ground to believe that any person has been guilty of contempt under section 1245a, Compiled Statutes, the court or judge thereof, or any judge therein sitting, may issue a rule requiring the person to show cause upon a day certain why he should not be punished for contempt, providing also for the proper service upon him of the affidavit or information; and then the section states:

"If upon or by such return, in the judgment of the court, the alleged contempt be not sufficiently purged, a trial shall be directed at a time and place fixed by the court."

Do the words "at a time and place fixed by the court" give to the court the power to direct a trial at any place in the district? We are satisfied they do not, but that the words "time and place" as therein used refer to a time or place within a statutory division of the district.

The United States having the right to pursue the parties for criminal contempt in the court whose order was violated, the corresponding right existed on the part of plaintiff in error; and without his consent the court could not fix a place outside of the division for the trial of the offense. He did not so assent, but raised by proper plea before answer filed the question of jurisdiction. It should have been sustained.

The case is reversed and remanded to the District Court, with instructions to sustain said plea.

Reversed.