# BARRETT v. UNITED STATES (No. 1).

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF SOUTH CAROLINA.

Argued January 21, 1898. — Decided February 21, 1898.

When a bill of exceptions does not contain the evidence, it is impossible
for this court to know the ground on which the trial court proceeded in
overruling a motion on the evidence to compel the district attorney to
elect, and an exception in that regard will not be considered.

In December, 1894, when the proceedings took place which are questioned
in this case, there were not two judicial districts in the State of South
Carolina, to the territorial limits of each of which the jurisdiction of the
Circuit Court of the United States was confined.

The legislation on this subject from the commencement of the Government
reviewed.

BARRETT was indicted, with others, as stated in the caption
of the transcript of the record, "at a Circuit Court of the
United States for the Fourth Circuit in and for the District of
South Carolina, begun and holden at Columbia in the district
aforesaid, on the fourth Monday in November, 1894, before
the Honorable Wm. H. Brawley, United States Judge for the
District of South Carolina, holding said Circuit Court accord-
ing to the form of the act of Congress in such cases made and
provided," for conspiracy to commit an offence against the
United States, under sections 5440 and 5480 of the Revised
Statutes, and, having been duly tried, was found guilty, and
sentenced to imprisonment and fine.

To review this judgment, this writ of error was prosecuted.

The indictment commenced as follows:

"United States of America, }
District of South Carolina, } To wit: In the Circuit Court.

"At a stated term of the Circuit Court of the United States
for the District of South Carolina, begun and holden at Colum-
bia, within and for the district aforesaid, on the fourth Mon-
day of November, in the year of our Lord one thousand
eight hundred and ninety-four, the jurors of the United States
of America within and for the district aforesaid upon their

oaths respectively do present that Charles P. Barrett, [and others naming them,] together with divers other evil-disposed persons to the jurors aforesaid unknown, late of the district aforesaid, on the first day of July, in the year of our Lord one thousand eight hundred and ninety-two, at Spartanburg, in the State of South Carolina aforesaid, in the district aforesaid and within the jurisdiction of this court, being persons of evil minds and dispositions, wickedly devising and intending to commit the offence against the United States hereinafter set forth, fraudulently, maliciously and unlawfully did combine, conspire, confederate and agree together between and among themselves to commit against the United States this offence — etc., etc."

Certain exceptions were taken to the action of the court in refusing to sustain a challenge to the array of both grand and petit jurors on the ground that they were drawn from both the eastern and western districts of South Carolina, when the alleged offence was charged in the indictment to have been committed in the county of Spartanburg in the western district of said State; to the order of the court overruling defendant's demurrer to the indictment on the ground that the offence was charged to have been committed in the county of Spartanburg, in the State of South Carolina, the same being in the western district of said State, although the indictment was found in the city of Columbia in the county of Richland in the eastern district thereof; to the refusal of the court to sustain defendant's plea to the jurisdiction on the ground that, although the alleged offence was charged to have been committed in the county of Spartanburg, the same being in the western district of South Carolina, the trial was sought to be had in the city of Columbia in the county of Richland, in the eastern district of said State; to the denial by the court of defendant's motion that the district attorney be required to elect on which one of several conspiracies disclosed by the evidence to have been committed, if any, he would ask for a conviction; and to the refusal of the court to arrest judgment because the grand jurors who found the indictment and the petit jurors who found the verdict were drawn from the west-

ern and eastern districts of South Carolina, although the offence was alleged to have been committed in the county of Spartanburg in the western district; because the indictment was found in the county of Richland in the eastern district at a time not authorized by law for the sitting of the United States court for the western district, and because the trial was had in the county of Richland in the eastern district for an offence committed in the western district.

*Mr. Charles C. Lancaster* for plaintiff in error.

*Mr. Assistant Attorney General Boyd* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

As to the action of the court overruling defendant's motion on the evidence to compel the district attorney to elect, the bill of exceptions does not contain the evidence, and it is impossible for this court to know the ground on which the Circuit Court proceeded. The exception in that regard need not therefore be considered.

In respect of the other exceptions, they all present the same objection in different forms, namely, that the State of South Carolina was divided into two judicial districts, and that an indictment could not be lawfully found in the Circuit Court of the United States held in the eastern district or a trial be therein had, for a criminal offence committed in the western district.

The Constitiltion provides that the trial of crimes shall be had in the State " where the crime shall have been committed; but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed," Art. III, § 2, cl. 3; and by Amendment VI, that " in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed,

which district shall have been previously ascertained by law."

This indictment was found December 3; the trial had December 6 to 11; and the defendant sentenced December 12, 1894, in the Circuit Court in session at Columbia. Were there at that time two judicial districts in South Carolina within the intent and meaning of the Constitution and the acts of Congress in that behalf?

The circuit court of each judicial district sits within and for that district; and its jurisdiction as a general rule is bounded by its local limits. *Toland* v. *Sprague*, 12 Pet. 300, 328; *Devoe Manufacturing Company, Petitioner*, 108 U. S. 401. At the same time courts may be required to be held at different places in a judicial district, and prosecutions for offences committed in certain counties may be required to be tried, and writs and recognizances to be returned at each place, but this does not affect the power of the grand jury sitting at either place to present indictments for offences committed anywhere within the district. *Logan* v. *United States*, 144 U. S. 263. As to where trials shall be had in a judicial district depends entirely on the legislation upon the subject. *Rosencrans* v. *United States*, 165 U. S. 257; *Post* v. *United States*, 161 U. S. 583.

By the judiciary act of September 24, 1789, c. 20, the then United States were divided into thirteen districts, of which New Hampshire, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Georgia and South Carolina each constituted one district, called by the name of the State, as for instance, " South Carolina district;" while a part of the State of Massachusetts was erected into a district " called Maine district," and a part of the State of Virginia into a district " called Kentucky district," the remaining part of the State of Massachusetts being made a district " called Massachusetts district," and the State of Virginia, except so much thereof as was thereby made the district of Kentucky, a district " called Virginia district." 1 Stat. 73.

The plan was to make each of the States a judicial district, and to direct the appointment of a judge, a clerk to be ap-

pointed by him, a district attorney and a marshal, for each district. But that part of Massachusetts now constituting the State of Maine and that part of the State of Virginia now forming the State of Kentucky were erected into independent districts under the names of "Maine District" and "Kentucky District," and the district court established in each was invested with the powers of a Circuit Court.

By the fourth section these districts, "except those of Maine and Kentucky," were divided into three circuits, called the eastern, the middle and the southern circuits; and it was provided that circuit courts should be held "in each district of said circuits," by two of the justices of the Supreme Court and "the district judge of such districts."

North Carolina having ratified the Constitution, November 21, 1789, Congress by the act of June 4, 1790, c. 17, 1 Stat. 126, gave effect to the judiciary act of 1789 in that State, erecting it into a district to be called "North Carolina district," establishing a district court with one judge, and annexing the district to the Southern circuit. Rhode Island having ratified the Constitution, May 29, 1790, a similar act to give effect to the judiciary act was passed June 23, 1790, c. 21, 1 Stat. 128, by which Rhode Island was annexed to the Eastern circuit.

From the first, then, district courts have been, in exceptional instances, vested with Circuit Court jurisdiction.

On February 21, 1823, an act was passed, c. 11, entitled "An act to divide the State of South Carolina into two judicial districts," as follows: "That the State of South Carolina be, and the same is hereby divided into two districts, in manner following, that is to say: the districts of Lancaster, Chester, York, Union, Spartanburg, Greenville, Pendleton, Abbeville, Edgefield, Newberry, Laurens and Fairfield; shall compose one district, to be called the western district, and the residue of the State shall form one other district to be called the eastern district. And the terms of the said district court, for the eastern district, shall be held at Charleston, at such times as they are now directed by law to be holden. And for the trial of all such criminal and civil causes, as are by law

cognizable in the district courts of the United States which may hereafter arise or be prosecuted, or sued, within the said western district, there shall be one annual session of the said district court holden at Laurens court-house, to begin on the second Monday in May in each year; to be holden by the district judge of the United States of the State of South Carolina; and he is hereby authorized and directed to hold such other special sessions as may be necessary for the despatch of the causes in the said court, at such time or times as he may deem expedient, and may adjourn such special sessions to any other time previous to a stated session." 3 Stat. 726.

By an act approved May 25, 1824, c. 145, entitled "An act to alter the times of holding the Circuit and District Courts of the United States for the district of South Carolina," 4 Stat. 34, it was provided that the Circuit Court "for the district of South Carolina" should annually be held "at Charleston on the second Tuesday of April; and at Columbia on the third Tuesday of November," etc.; and that "the times of holding the district court of the United States at Laurens court-house, South Carolina, shall be so altered that the said court shall hereafter convene on the Tuesday next ensuing after the adjournment of the Circuit Court of the United States at Columbia."

On March 3, 1825, this act was amended by providing that "the Circuit Court for the district of South Carolina at Columbia, South Carolina, shall commence on the fourth Tuesday of November, annually." 4 Stat. 124, c. 78.

By an act of May 4, 1826, c. 37, the sessions of the Circuit Court "for the District of South Carolina" were again changed, 4 Stat. 160; and again February 24, 1829, c. 19, 4 Stat. 335.

By the act of March 1, 1845, 5 Stat. 730, c. 39, it was provided, referring to the Circuit Court, "that the spring term of said court shall be held in and for the district of South Carolina at Charleston, on the Wednesday preceding the fourth Monday of March."

By an act approved August 16, 1856, c. 119, entitled "An

act to alter the time for holding the district court in South Carolina, and for other purposes," 11 Stat. 43, it was provided that so much of the act of May 25, 1824, as provided "for holding the District Court of the United States at Laurens court-house, South Carolina, on the Tuesday next ensuing after the adjournment of the Circuit Court of the United States at Columbia, be and the same is hereby repealed; and that in place thereof the said court shall be held at Greenville court-house, South Carolina, on the first Monday in August in each year." And it was further provided that the jurors for said court, grand as well as petit, should be drawn "from the inhabitants of Greenville district, South Carolina," except that the jurors for the first term of the court should be drawn at "the term of the district court to be holden in the city of Charleston;" and further that "the said district court for Greenville, in addition to the ordinary jurisdiction and powers of a District Court of the United States, shall have jurisdiction of all causes (except appeals and writs of error) which now are or may be hereafter made cognizable in a Circuit Court of the United States, and shall proceed in the same manner as a Circuit Court."

The act of July 15, 1862, c. 178, 12 Stat. 576, provided that "the districts of South Carolina, Georgia, Alabama, Mississippi and Florida, shall constitute the fifth circuit;" and repealed the act or acts which vested circuit court powers in the district courts for the districts of Texas, Florida, Wisconsin, Minnesota, Iowa and Kansas; while by the act of March 3, 1863, c. 100, 12 Stat. 794, the districts of California and Oregon were constituted the tenth circuit; and so much of any act or acts as vested in the district courts for California and Oregon the power and jurisdiction of circuit courts was repealed.

By the act of July 23, 1866, c. 210, 14 Stat. 209, it was provided that "the districts of Maryland, West Virginia, Virginia, North Carolina and South Carolina shall constitute the fourth circuit."

The act of April 10, 1869, c. 22, 16 Stat. 44, authorized the appointment of a circuit judge "for each of the nine existing judicial circuits;" but that act, by the act of July 1, 1870, c.

186, was not to be construed "to require a circuit court to be held in any judicial district in which a circuit court was not required to be held by previously existing law." 16 Stat. 179.

In the Ku Klux Cases, tried in the Circuit Court at Columbia, in the fall of 1871, before Circuit Judge Bond and District Judge Bryan, Mr. Reverdy Johnson objected to the issue of a. venire to summon additional grand and petit jurors "from the body of the district" embracing the whole State, though he admitted that "it is true that the circuit court has jurisdiction, as a court, over the entire district of South Carolina." The court ruled that so far as the circuit court was concerned there was but one district in South Carolina. South Carolina Ku Klux Trials, pp. 8, 9, 10.

The Revised Statutes were adopted June 22, 1874, (the second edition being published in 1878,) and contain the following sections :

"Sec. 530. The United States shall be divided into judicial districts as follows:

"Sec. 531. The States of California, Connecticut, Delaware, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, Oregon, Rhode Island, Vermont and West Virginia, each, constitute one judicial district."

"Sec. 546. The State of South Carolina is divided into two districts, which shall be called the eastern and western districts of the district of South Carolina. The western district includes the counties of Lancaster, Chester, York, Union, Spartanburg, Greenville, Pendleton, Abbeville, Edgefield, Newberry, Laurens and Fairfield, as they existed February 21, 1823. The eastern district includes the residue of said State."

"Sec. 551. A district judge shall be appointed for each district, except in the cases hereinafter provided. Every such judge shall reside in the district for which he is appointed, . . .

"Sec. 552. There shall be appointed in each of the States of Alabama, Georgia, Mississippi, South Carolina and Tennessee, one district judge, who shall be district judge for each of the districts included in the State for which he is appointed, and shall reside within some one of the said districts. . . ."

" SEC. 571. The district courts for the western district of Arkansas, the eastern district of Arkansas at Helena, the northern district of Mississippi, the western district of South Carolina and the district of West Virginia, shall have in addition to the ordinary jurisdiction of district courts, jurisdiction of all causes, except appeals and writs of error, which are cognizable in a circuit court, and shall proceed therein in the same manner as a circuit court.

" SEC. 572. The regular terms of the district courts shall be held at the times and places following: . . . In the eastern district of South Carolina, at Charleston, on the first Monday in January, May, July and October. In the western district, at Greenville, on the first Monday in August."

" SEC. 604. The judicial districts of the United States are divided into nine circuits as follows: ' . . . Fourth. The Fourth Circuit includes the districts of Maryland, Virginia, West Virginia, North Carolina and South Carolina. . . ."

" SEC. 608. Circuit courts are established as follows: One for the three districts of Alabama, one for the eastern district of Arkansas, one for the southern district of Mississippi and one for each district in the States not herein named; and shall be called the circuit courts for the districts for which they are established."

" SEC. 658. The regular terms of the circuit courts shall be held in each year, at the times and places following. . . : In the district of South Carolina, at Charleston, on the first Monday in April ; and at Columbia, on the fourth Monday in November."

" SEC. 767. There shall be appointed in each district, except in the middle district of Alabama, and the northern district of Georgia, and the western district of South Carolina, a person learned in the law, to act as attorney for the United States in such district. . . . The district attorney of the eastern district of South Carolina shall perform the duties of district attorney for the western district of said State."

Section 776 makes similar provision as to United States marshals for said districts.

" SEC. 563. The district courts shall have jurisdiction as follows:

"First. Of all crimes and offences cognizable under the authority of the United States, committed within their respective districts, . . . the punishment of which is not capital. . . ."

"SEC. 629. The circuit courts shall have original jurisdiction as follows: . . . Exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where it is or may be otherwise provided by law, and concurrent jurisdiction with the district courts of crimes and offences cognizable therein."

The Revised Statutes were compiled under an act of June 27, 1866, c. 140, providing " for the revision and consolidation of the statute laws of the United States," 14 Stat. 74, the appointment of three commissioners being thereby authorized to accomplish the work. These commissioners were directed to arrange the statutes and parts of statutes "under titles, chapters and sections, or other suitable divisions and subdivisions, with headnotes briefly expressive of the matter contained in such divisions; also with side notes so drawn as to point to the contents of the text and with references to the original text from which each section is compiled."

By the act of March 2, 1877, c. 82, 19 Stat. 268, the preparation and publication of a new edition of the Revised Statutes was provided for, the work to be done by a single commissioner, who was required to add to the marginal references made in the previous revision.

In *United States* v. *Lacher*, 134 U. S. 624, 626, we said : " If there be any ambiguity in section 5467, inasmuch as it is a section of the Revised Statutes, which are merely a compilation of the statutes of the United States, revised, simplified, arranged and consolidated, resort may be had to the original statute from which this section was taken to ascertain what, if any, change of phraseology there is and whether such change should be construed as changing the law. *United States* v. *Bowen*, 100 U. S. 508, 513; *United States* v. *Hirsch*, 100 U. S. 33; *Myer* v. *Car Company*, 102 U. S. 1, 11. And it is said that this is especially so where the act authorizing the revision directs marginal references

as is the case here. 19 Stat. c. 82, § 2, p. 268; Endlich on Int. Statutes, § 51."

Section 546 appears under "Title XIII. The Judiciary. Chapter one. Judicial Districts;" and the cross-reference in the margin is to the act of "21 Feb. 1823, c. 11, § 1, v. 3, p. 726."

When, then, Congress enacted this section it seems to have construed the act of 1823, not as dividing the State into two judicial districts, as indicated in the title of the act, but into two districts in the sense of geographical divisions, which is in harmony with the language used in the body of the act. At all events, the phraseology of section 546 is only consistent with the conclusion that the State constituted but one judicial district, containing two divisions, which were "called the eastern and western districts of the district of South Carolina."

And it should be remembered that there was, during all this time, (and this has prevailed from thence hitherto,) but one judge, one attorney and one marshal for the district of South Carolina.

It is said that in the first draft of the commission to revise the statutes, the commissioners recommended the adoption of a section corresponding to section 546, in this language : "The district of South Carolina is divided into two divisions, which will be called the eastern and western divisions of the district of South Carolina. The western division includes the counties of Lancaster, etc., as they existed February 21, 1823. The eastern division includes the residue of said State." And it is argued that because section 546 was couched in its present language, notwithstanding the recommendation, that it therefore follows that Congress intended to divide the State into two judicial districts. We cannot concur in that view. While the use of the word "division" might have been more felicitous, yet we think the meaning of the statute was sufficiently plain, and that it would be inadmissible to recur to the draft of the commissioners to create a doubt where none existed. Moreover, it would be a much greater stretch of construction to say that because Congress did not see fit to use the word "division," therefore it should be held that the

words actually employed, "of the district of South Carolina," were inadvertently inserted, and should be rejected altogether.

It should be noted that by section 608 Circuit Courts were established for each district in the States not therein named, the States specified being Alabama, Arkansas and Mississippi and yet that by section 571 certain district courts, including that for the western district of South Carolina, retained circuit court powers.

Nevertheless, it was held by Chief Justice Waite, sitting with Judge Bond in the Circuit Court in 1877: "As to the question of the jurisdiction of this court throughout the entire State of South Carolina, we decide, for the purposes of this trial, in favor of the jurisdiction. This is in accordance with the uniform practice of the court, without objection from any quarter, for nearly half a century." *United States* v. *Butler,* 1 Hughes, 457, 463.

And in 1886, it was said by Simonton, J., holding the Circuit Court: "All parts of the State of South Carolina are within the jurisdiction of this court. Its process runs all through the State. It does not know, in the sense which affects its jurisdiction, either the eastern or western district." *Young* v. *Merchants' Ins. Co.,* 29 Fed. Rep. 273, 275.

However we are relieved from considering the effect upon the jurisdiction of a Circuit Court having jurisdiction throughout a State, constituting a single judicial district, of a part of the district being subjected to the jurisdiction of the district court clothed with circuit court powers, as the act of February 6, 1889, c. 113, 25 Stat. 655, in terms "established a circuit court of the United States in and for the western district of Arkansas, the northern district of Mississippi and the western district of South Carolina, respectively, as the said districts are now constituted by law;" and withdrew circuit court powers from said district courts.

By the act of April 26, 1890, c. 165, 26 Stat. 71, it was provided that there should be "four regular terms of the Circuit Court of the United States for the District of South Carolina in each year, as follows: In the city of Greenville on the

first Monday of February and on the first Monday in August; in the city of Charleston on the first Monday of April; and in the city of Columbia on the fourth Monday of November;" and that "the office of the clerk of said court shall be kept in the cities of Charleston and of Greenville, and the clerk shall reside in one of the said cities and shall have a deputy in the other." And although the act then went on to prescribe terms "of the District Courts for the Eastern District of South Carolina," and "of the District Court in the Western District of South Carolina," we think the operation of the prior sections was not thereby affected.

It may be added that in the legislative, executive and judicial appropriation act of May 28, 1896; c. 252, §§ 7, 9, appropriations were made for the salaries (among others) of the United States district attorney "for the eastern and western districts of the district of South Carolina," and of the United States marshal "for the eastern and western districts of the district of South Carolina." 29 Stat. 140.

From this review of the statutes we are unable to arrive at any other conclusion than that in 1894, when these proceedings were had, there were not two judicial districts in the State of South Carolina, to the territorial limits of each of which the jurisdiction of the Circuit Court was confined; and that the exceptions in this regard must be held not to have been well taken.

It is also suggested in the brief for plaintiff in error that error supervened in that the record does not affirmatively show the issue of the venire for the grand and petit juries; nor that the defendant was arraigned; nor that he was personally present when the verdict was rendered and sentence pronounced.

But the record does show that the indictment was duly returned; that motions to quash the indictment and the venire of grand and petit juries were made and overruled; that the defendant pleaded "not guilty" to said indictment; that the trial came on on that issue, and a petit jury was duly empanelled and sworn; that trial was had and a verdict of guilty returned, and sentence thereon entered; and that no exceptions

were saved to any of these proceedings other than the exceptions before mentioned.

The result is that the judgment must be

*Affirmed.*