PEOPLE'S UNITED STATES BANK v. GOODWIN et al.

(Circuit Court, E. D. Missouri, E. D.   June 23, 1908.)

No. 5,593.

1. STATUTES—CONSTRUCTION OF REVISED STATUTES—REFERENCE TO ORIGINAL ACTS.

Acts of Congress enacted before 1873, parts of which were incorporated in the Revised Statutes, and which were thereby repealed, may be referred to in construing the provisions taken therefrom.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 302–306.]

2. REMOVAL OF CAUSES—NATURE OF CONTROVERSY—ACTIONS AGAINST UNITED STATES.

To render an action against an officer of the United States removable from a state to a federal court by certiorari under Rev. St. § 643 (U. S. Comp. St. 1901, p. 521), which provides for such removal of suits "against any officer appointed under or acting by authority of any revenue law of the United States * * * or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law," etc., the acts which constitute the cause of action must have some rational connection with official duties under a "revenue law," and in some way affect the revenue of the government, and such fact must appear on the face of the complaint in the action or the petition for the writ. An action for libel against the Assistant Attorney General for the Post Office Department and an inspector of such department, based on the promulgation by them of a fraud order against the plaintiff, does not meet such requirements and is not removable under said section.

On motion to set aside order for writ of certiorari and to quash the writ.

This action was instituted in the circuit court for the city of St. Louis, state of Missouri, to recover damages for an alleged libel charged to have been wrongfully and maliciously written, composed, and published by the defendants. It was sought to remove the cause from the state court to this court upon the ground that there was a federal question involved, but a motion to remand it to the state court was sustained upon the ground that the complaint did not show that there was such a question in the case. 160 Fed. 727. It is now sought to remove it to this court by certiorari under section 643, Rev. St. (U. S. Comp. St. 1901, p. 521). The petition for certiorari alleges: That the defendant Goodwin was the Assistant Attorney General for the Post Office Department of the United States, and the defendant Fulton, inspector in charge of the post office inspectors of the United States at the time and for some time prior to the acts complained of in the declaration; that all of said acts were committed by them solely in their capacity as officers of the United States in the Post Office Department thereof, in the discharge of their official duties, and not otherwise; that the action was commenced by plaintiff on account of acts done by defendants under authority of the revenue laws of the United States, and under and by virtue of their offices aforesaid, which said offices were occupied by them all the time mentioned in the declaration, and they therefore pray for a removal of the cause from the state to this court, and that a writ of certiorari issue for that purpose in pursuance of section 643, Rev. St. (U. S. Comp. St. 1901, p. 521).

The petition is duly verified by defendants, and also has certificate of counsel, as prescribed by that statute. The granting of the writ was resisted by counsel for plaintiff, who appeared specially for that purpose; but the court, owing to the importance of the issues involved, granted an order for the writ with leave to plaintiff to file a motion to set aside this order and quash the writ. By consent of parties, the issuance of the writ was waived, and a transcript of the pleadings in the state court filed as a return in the same manner as if a writ of certiorari had been issued. In pursuance of

the leave granted, plaintiff filed a motion to set aside the order for the writ and quash it. There are several grounds assigned in the motion, but the substantial one alleged for the quashing of the writ is that "the petition does not allege or show that the petitioners are or were officers under any revenue law of the United States or otherwise within the terms of section 643, Rev. St. (U. S. Comp. St. 1901, p. 521)." The motion may therefore be properly treated as a demurrer to the sufficiency of the petition and the jurisdiction of this court to grant the writ upon the allegations of the petition. Virginia v. Felts (C. C.) 133 Fed. 85.

Barclay & Fauntleroy, for plaintiffs.

H. W. Blodgett, U. S. Atty., and T. P. Young, Asst. U. S. Atty., for defendants.

TRIEBER, District Judge (after stating the facts as above). The importance of the questions of law involved, and the ability with which the case has been argued by counsel, and the fact that the precise question involved in this proceeding has never been determined by the Supreme Court or the Circuit Court of Appeals for this circuit require a more full review of the statute in question and the principles of law which will aid in a construction thereof than would ordinarily be necessary. The section under which the proceeding is instituted is lengthy and was digested by the compilers of the Revised Statutes from a number of acts, some of which have been repealed since the enactment of the Revised Statutes; but, as the petition is based solely upon the claim that the defendants committed the acts complained of by the plaintiff under and by virtue of the revenue laws of the United States, it is unnecessary to refer to any other part of that section than the one relating to "any officer appointed under, or acting by, authority of any revenue law of the United States, now or hereafter enacted, or against any person acting under, or by, authority of any such officer, on account of any act done under color of his office, or of any such law, or on account of any right, title or authority claimed by such officer or other person under any such law."

The constitutionality of the act is not questioned; that having been fully determined in Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648, and Davis v. South Carolina, 107 U. S. 591, 2 Sup. Ct. 636, 27 L. Ed. 574. Although under section 5596, Rev. St., all acts of Congress passed prior to the 1st day of December, 1873, any portion of which is embraced in any section of the Revised Statutes, are repealed (United States v. Bowen, 100 U. S. 508, 25 L. Ed. 631), still, when there is a doubt as to the construction of a section of the Revised Statutes, it is proper to refer to the original acts from which the section was taken for the purpose of ascertaining the true intent of Congress, and this is especially so where the act authorizing the revision directs marginal references, as is the case in the act authorizing the Revised Statutes. United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080; The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937; Barrett v. United States, 169 U. S. 218, 18 Sup. Ct. 327, 42 L. Ed. 723.

The first act passed by Congress on that subject (excepting Act Feb. 4, 1815, c. 31, 3 Stat. 198, which was intended to be of short duration only, during the then existing war between the United States and Great Britain, extended by Act March 15, 1815, c. 94, § 6, 3 Stat.

233, and re-enacted by Act March 3, 1817, c. 109, 3 Stat. 396, for the term of four years), was Act March 2, 1833, c. 57, 4 Stat. 633, entitled "An act to provide for the collection of duties on imports." Section 3 of that act, in so far as it is necessary to quote it for the determination of the issue involved in this case, is as follows:

"That in any case where suit or prosecution shall be commenced in a court of any state against any officer of the United States, or other person, for or on account of any act done under the revenue laws of the United States, or under color thereof, or for, or on account of, any right, authority or title set up or claimed by such officer or other person under any such law of the United States, it shall be lawful for the defendant in such suit or prosecution at any time before trial, upon a petition to the Circuit Court of the United States, in and for the district in which the defendant shall have been served with process * * * which petition, affidavit and certificate shall be presented to the said Circuit Court if in session, and if not, to the clerk thereof at his office, and shall be filed in said office and the cause shall thereupon be entered on the docket of said court and shall thereafter be proceeded in as a cause originally commenced in that court; and it shall be the duty of the clerk of said court, if the suit were commenced in the court below by summons, to issue a writ of certiorari to the state court requiring said court to send to the said Circuit Court the record and proceedings in said cause."

The cause which led to the enactment of this act was the attempted nullification of the tariff laws by one of the states of the Union and was upon the recommendation of President Jackson in a special message to Congress. 2 Richardson's Messages and Papers of the Presidents, p. 610. A history of the causes which led to the enactment of the act may be found in the opinion of Mr. Justice Strong in Tennessee v. Davis, supra.

In view of the title of the act, it had been held that it applied only to duties on imports, and not to cases arising under the internal revenue laws. Stevens v. Mack, 5 Blatch. 514, Fed. Cas. No. 13,404, where Judge Benedict held that it did not even apply to cases arising under the internal revenue laws. In Philadelphia v. Diehl, 5 Wall. 720, 728, 18 L. Ed. 614, Mr. Justice Clifford, delivering the opinion of the court upon the same matter, said:

"Undoubtedly the original act was passed for the protection of officers of the revenue and persons acting under them, charged by law with the collection of import duties."

The first act of Congress intending to extend the provisions of the act to the internal revenue laws was Act June 13, 1864, c. 173, 13 Stat. 223, 241, entitled "An act to provide internal revenue to support the government, to pay interest on the public debt and for other purposes." Section 50 of that act is as follows:

"That the provisions of the act entitled 'An act to provide for the collection of duties on imports,' approved March 2, 1833, now in force, shall be taken and deemed as extended to and embracing all cases arising under the laws for the collection of internal duties, stamp duties, licenses or taxes which have been, or may be hereafter enacted; and all persons duly authorized to assess, receive or collect such duties or tax under such laws are hereby declared to be, and to have been revenue officers within the true intent and meaning of said act and entitled to all the exemptions, immunities, rights, benefits and privileges therein enumerated or conferred."

By Act July 13, 1866, c. 184, 14 Stat. 98, 171, entitled "An act to reduce internal taxes and to amend an act entitled 'An act to provide

'internal revenue to support the government, to pay interest on the public debt and for other purposes,' approved June 30, 1864, and acts amendatory thereof," the section of the act of 1864 above quoted was repealed by a proviso in section 67, and in lieu thereof what is practically now that part of section 643, Rev. St. (U. S. Comp. St. 1901, p. 521), under which it is sought to remove this cause to this court, enacted. As this matter is fully discussed in Philadelphia v. Diehl, supra, it is sufficient to refer to that case.

There can be therefore no doubt but that under the act now in force all persons acting under or by authority of any revenue law, whether custom or internal revenue, are included. The question then to be determined is: Are the petitioners, who were officers under the Post Office Department of the United States, revenue officers within the meaning of that section of the law, and, if so, are the acts which form the basis of this suit of such nature as would justify the claim that they were acting under the revenue laws of the United States?

Assuming, without deciding, that the Assistant Attorney General for the Post Office Department is an officer of that department, and not of the judicial, and that the acts of both of these officers complained of were in the discharge of their official duties, and not otherwise, as alleged in their petition for certiorari, are they entitled to have this cause removed to this court under the provisions of that statute? The first question to be determined is: What are "revenue laws" in the ordinary meaning of the words as defined by the courts of the United States?

It is hardly possible to determine that question by a general statement to cover every possible phase, and, at all events, in the language of Mr. Justice Harlan, in Twin City Bank v. Nebeker, 167 U. S. 196, 202, 17 Sup. Ct. 766, 42 L. Ed. 134:

"What bills belong to that class (for raising revenue) is a question of such magnitude and importance that it is the part of wisdom not to attempt by any general statement to cover every possible phase of the subject."

He then quotes with approval from section 880 of Story on the Constitution on that point, which is as follows:

"What bills are properly bills for raising revenue in the sense of the Constitution has been a matter of some discussion. A learned commentator supposes that every bill which indirectly or consequentially may raise revenue is, within the sense of the Constitution, a revenue bill. He therefore thinks that the bill for establishing the post office, the mint, and regulating the value of foreign coins belongs to this class and ought not to have originated in the Senate. But the practical construction of the Constitution has been against his opinion. And, indeed, the history of the origin of the power already suggested abundantly proves that it has been confined to bills to levy taxes in the strict sense of the word, and has not been understood to extend to bills for other purposes which may incidentally create revenue. No one supposes that a bill to sell any of the public lands or to sell public stock is a bill to raise revenue in the sense of the Constitution. Much less would a bill be so deemed which merely regulated the value of foreign or domestic coins or authorized a discharge of insolvent debtors upon an assignment of their estates to the United States giving a priority of payment to the United States in cases of insolvency, although all of them might incidentally bring revenue into the Treasury."

In Peyton v. Bliss, Woolw. 170, Fed. Cas. No. 11,055, Mr. Justice Miller defined a "revenue law" to be:

"Any law which provides for the assessment and collection of a tax to defray the expenses of the government."

In The Nashville, 4 Biss. 188, Fed. Cas. No. 10,023, the court defined a "revenue law" to be:

"A law whose principal object is the raising of revenue and not one under which revenue may incidentally arise."

In United States v. Norton, 91 U. S. 566, 568, 23 L. Ed. 454, the court, after quoting Webster's lexical definition of the term "revenue" ("The income of a nation, derived from its taxes, duties or other sources, for the payment of the national expenses"), say:

"The phrase 'other sources' would include the proceeds of the public lands, those arising from the sale of public securities, the receipts of the Patent Office in excess of its expenditures, and those of the Post Office Department when there should be such excess as there was for a time in the early history of the government. Indeed, the phrase would apply in all cases of such excesses. In some of them the result might fluctuate; there being excess at one time and deficiency at another. It is a matter of common knowledge that the appellative 'revenue laws' is never applied to the statutes involved in these classes of cases."

And thereupon the court held that the act of Congress entitled "An act to establish a postal money order system," approved May 17, 1864, is not a revenue law within the meaning of the act entitled "An act in addition to the act entitled 'An act for the punishment of certain crimes against the United States, approved March 26, 1874.'" The court in its opinion cites with approval from United States v. Mayo, 1 Gall. 396, Fed. Cas. No. 15,755, where Mr. Justice Story held that the phrase "revenue laws" meant "such laws as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government."

In United States v. Hill, 123 U. S. 681, 685, 8 S. Ct. 308. 31 L. Ed. 275, it was sought to maintain a writ of error in the Supreme Court upon the ground that the money sought to be collected by the action was for fees collected by a clerk of a court of the United States for naturalizations and therefore within that part of section 699, Rev. St. (U. S. Comp. St. 1901, p. 568), which confers upon the Supreme Court jurisdiction on error without regard to the sum or value in dispute in any civil action brought by the United States for the enforcement of any revenue law thereof, and it was held:

"The precise question for decision is whether this section which provides for the payment by the clerk into the Treasury of the surplus moneys received by him as the fees and emoluments of his office, is a 'revenue law,' within the meaning of that clause of section 699 which is relied on, and we have no hesitation in saying that it is not. As the provision relates to the jurisdiction of this court for the review of the judgments of the Circuit Courts, it is proper to refer to the statutes giving jurisdiction to those courts to see if there is anything there to show what the term 'revenue law,' as here used, means. Looking then to section 629 of the Revised Statutes, we find that by the fourth subdivision the Circuit Courts have been granted original jurisdiction 'of all suits at law or in equity arising under any act providing for revenue from imports or tonnage,' and 'of all causes arising under any law providing internal revenue.' And again, by the twelfth subdivision, 'of all suits

brought by any person to recover damages for any injury to his person or property on account of any act done by him under any law of the United States for the protection or collection of any of the revenues thereof.' This clearly implies that the term 'revenue law,' when used in connection with the jurisdiction of the courts of the United States, means a law imposing duties on imports or tonnage, or a law providing in terms for revenue—that is to say, a law which is directly traceable to the power granted to Congress by section 8, art. 1, of the Constitution—'to lay and collect taxes, duties, imposts, and excises.' * * * Certainly it will not be claimed that the clerk of a District Court of the United States is an 'officer of the revenue'; but there is nothing to indicate that the term 'revenue' has any different signification in this subdivision of the section from that which it has in the other. The clerk of a court of the United States collects his taxable 'compensation,' not as the revenue of the United States, but as the fees and emoluments of his office, with an obligation on his part to account to the United States for all he gets over a certain sum which is fixed by law. This obligation does not grow out of any 'revenue law,' properly so called, but out of a statute governing an officer of a court of the United States."

In Millard v. Roberts, 202 U. S. 429, 436, 26 S. Ct. 674, 50 L. Ed. 1090, section 880 of 1 Story on Constitution, hereinbefore set out, is again quoted with approval and followed.

In Campbell v. James (C. C.) 3 Fed. 513, 516, it was sought to have a postmaster declared to be an officer of the revenue within the meaning of section 989, Rev. St. (U. S. Comp. St. 1901, p. 708); but this was denied by the court, and Judge Blatchford, then circuit judge and shortly thereafter one of the justices of the Supreme Court, in his opinion on that subject, said:

"It is clear that the word 'revenue,' in all these forms of expression, means only the revenue from customs. The act does not relate to revenue from any other source. * * * Under said section the words 'other officers of the revenue' would never have been construed to mean a postmaster. * * * This is the view held by the Post Office Department itself, for in the report of the Postmaster General to the President, of November 8, 1879, reference is made to this suit, and to the decision on it, by the interlocutory decree, adverse to the defendant James, and it is stated that 'there is no provision of federal law to secure "certificates of probable cause" to United States officials, other than treasury officials, in cases of adverse judgments for acts done in their official capacity.' This is unquestionably a correct view."

The cases relied upon by defendants to sustain the contention that they were officers acting under a revenue law are United States v. Bromley, 12 How. 88, 13 L. Ed. 905; Warner v. Fowler, 4 Blatchf. 311, Fed. Cas. No. 17,182; Ward v. Congress Construction Co., 99 Fed. 598, 39 C. C. A. 669.

In the Bromley Case the question before the court was whether an action under Act Cong. March 3, 1845, entitled "An act to reduce the rates of postage, to limit the use and correct the abuse of the franking privilege, and for the prevention of frauds in the revenue of the Post Office Department," was removable to the Supreme Court by writ of error under the provisions of Act May 31, 1844, entitled "An act to amend the judiciary act passed the 24th of September, 1789," which provides:

"That final judgments in any Circuit Court of the United States for the enforcement of the revenue laws of the United States, and for the collection of the duties on merchandise imported therein, may be examined and reversed or affirmed in the Supreme Court of the United States, without regard to the sum or value in controversy in such action, at the instance of either party."

And it was held that that act "in its title is declared to be an act to reduce the rates of postage, and for the prevention of frauds on the revenue of the Post Office Department. In its character and object it is a revenue law, as it acts upon the rates of postage and increases the revenue by prohibiting and punishing fraudulent acts which lessen it," and therefore within the meaning of the act of May 31, 1844. The cause was an action of debt under Act March 3, 1845; the declaration charging that:

"The defendant was the captain of the packet boat Empire, which regularly performed trips, at stated periods, between two places, from one to the other of which places the United States mail was regularly conveyed, under the authority of the Post Office Department, to wit, between Albion and Rochester, and that the said packet boat, and the said defendant so being such captain, and the managers, servants, and crews of the said packet boat, did, while the said defendant was such captain thereof, and while the said packet boat did regularly perform trips, at stated periods, between the said places, the said United States mail being regularly conveyed, under the authority of the Post Office Department, from one to the other of the said places, transport and convey, otherwise than in the mail, divers letters, packets, and packages of letters, to wit, 10 letters, 10 packets, and 10 packages of letters, then and there being mailable matter, other than newspapers, etc., and which said letters, packets, and packages of letters did not, nor did any or either of them, have relation to any part of the cargo of the said packet boat, from one to the other of the said places, from one to the other of which said places the United States mail was then and there regularly conveyed as aforesaid, under the authority of the Post Office Department, contrary to the intent of the act."

It was therefore clearly an action to recover penalties for the violation of that part of the act of Congress which was enacted as shown by the title of the act, as well as its plain language "to increase the revenues of the Post Office Department." It may be conceded that that case is authority for the proposition that certain acts of officers of the Post Office Department, or, for that matter, of any other department of the government, may be acts under a revenue law, and still it is not decisive of the issue involved in this action. It certainly is not conclusive authority to the point that all acts by officers of that department are acts under "a revenue law." Questions affecting the rates of postage would probably be such, as the revenue of the government would be affected thereby. But nothing in plaintiff's declaration or defendant's petition for the writ of certiorari discloses anything whereby the revenues of the government were or can in the remotest degree be affected by the acts charged. United States v. Norton, supra, where the Bromley Case is distinguished.

Warner v. Fowler, supra, was decided in the Circuit Court for the Southern District of New York by Judge Ingersoll in 1859. It was there held that a postmaster was a revenue officer within the meaning of section 3 of the Act of March 2, 1833, citing United States v. Bromley as conclusive authority for this ruling. But this case has been clearly overruled by the same court in Victor v. Cisco, 5 Blatchf. 128, Fed. Cas. No. 16,934, and Stevens v. Mack, 5 Blatchf. 514, Fed. Cas. No. 13,404, and at least by implication by what was decided by the Supreme Court in Philadelphia v. Diehl, supra.

In Victor v. Cisco, it was sought to remove a cause under that act

against an assistant treasurer of the United States; but the writ of certiorari was denied by Judge Shipman upon the ground that it was not embraced within the provisions of the act of 1833.

In Stevens v. Mack, decided in 1867, it was held by Judge Benedict that the act of March 2, 1833, applied only to cases arising under the revenue laws for the collection of duties on imports, and not to cases arising under the law for the collection of internal revenue. This construction of the act of 1833, as stated by Judge Benedict in his opinion, and also that of the Supreme Court in Philadelphia v. Diehl, must have been the view of Congress, otherwise it would not have provided by the acts of June 30, 1864, and July 13, 1866, that section 3 of the act of 1833 shall be applicable to all cases arising under the laws for the collection of internal duties. Had Congress desired to extend the benefits of that act to the officers of all departments of the government which might, incidentally, collect moneys which have to be covered into the treasury, and for that reason become revenue, it would have used language which would have left no doubt as to its intention.

In legislating on the subject of original jurisdiction of the Circuit Courts of the United States, Congress used such language. Subdivision 4 of section 629, Rev. St. (U. S. Comp. St. 1901, p. 503), provides:

"Of all suits at law or in equity, arising under any act providing for revenue from imports or tonnage, * * * of all causes arising under any law providing internal revenue, and all causes arising under the postal laws."

Had Congress intended to extend the provisions of section 643 to causes arising under the postal laws, is it unreasonable to presume that it would have used language as free from ambiguity as it employed in the above? It may have been an oversight, but the courts are as powerless to correct an oversight as they are when the omission is intentional. In view of the fact that these two (sections 629 and 643) were prepared by the same digesters and enacted by Congress at the same time, ought not the well-known maxim that "an affirmation in a particular case implies a negation in all others" apply?

In Benchley v. Gilbert, 8 Blatchf. 147, Fed. Cas. No. 1,291 it was sought to remove, under this act, an action against a United States commissioner to recover money alleged to have been illegally exacted by him as costs and fees in a criminal proceeding before him; but it was held by Judge Woodruff that the action would not lie. The learned judge in his opinion said:

"In short, the officers contemplated by section 67 of the act of 1866 are officers whose authority to perform their official duties is derived from the internal revenue law, either by appointment or other express authority conferred by it. In the discharge of their official duty, to whatever that duty relates, they act under that law and under its protection. This is gathered not only from the language of the particular section, but also from the language and manifest intent of the acts of 1833 and 1864. The legislation of 1833 was for the protection of officers of the customs; that of 1864 and 1866 for the protection of internal revenue officers and their subordinates."

In Ward v. Congress Construction Company, the removal was sustained upon the ground that the act in controversy was ordered by the Secretary of the Treasury, who is "the officer administering the rev-

enue laws of the United States, acting under color of his office." It is unnecessary to express an opinion on that case, as no one will contend that any officer connected with the Post Office Department, and especially these defendants, are "officers administering the revenue laws of the United States." It is the Treasury Department which, by law, is charged with the administration of all revenue laws, customs and internal. If the fact that some acts of the officers of a department performed in pursuance of an act of Congress result in the collection or receipt of moneys which must necessarily be paid into the Treasury of the United States, and thereby become available for the payment of the governmental expenses, makes that department and all the officials under it persons acting under "the revenue laws" of the United States within the meaning of section 643, it is hard to imagine a case against any officer of the United States which would not be removable under that section.

Officers of the judicial department, clerks and marshals, collect all fines and penalties imposed under the criminal laws of the United States; the marshals of the United States collect fees for their services from litigants—and all these moneys, whether collected for fines and penalties or fees for services performed by these officers, are required to be paid into the national treasury, and are, of course, available and used for defraying the expenses of the government under the appropriation acts of Congress. The Department of the Interior is charged with the sale of the public lands and the collection of all revenues arising from the public domain; the War and Navy Departments are authorized to sell many articles when they cease to be of further use for the purposes of these departments; the Department of Commerce and Labor collects certain fees in naturalization cases— and all these moneys are required by law to be paid into the Treasury to be used in the same manner as moneys collected under the revenue laws. Do these facts make all the officials and employés of those departments officers acting under "the revenue laws" of the United States within the meaning of section 643? The mere statement of these facts is a conclusive answer to the defendants' contention.

In my opinion, to permit the removal of a cause under this section of the law, the acts which constitute the cause of action must have some rational connection with official duties under "a revenue law," and in some way affect the revenue of the government. It could hardly be claimed that even a revenue collector, if sued for some act claimed to have been committed in the performance of his official duties, would have the right to remove the cause under section 643, if neither the declaration nor petition for certiorari showed that the act for which he was sued was in fact in the performance of an official duty imposed on him by law, having some relation to the collection of revenue for the government. These facts must appear on the face of the complaint in the action or in the petition for the writ of certiorari; otherwise a national court is without jurisdiction. Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667; Virginia v. Paul, 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386. To merely state the opinion of the petitioner or his counsel that such a question is involved is insufficient to justify the granting of the writ.

162 F.—60

In Salem & L. R. Company v. Boston & L. R. Co., Fed. Cas. No. 12,249, it was sought to remove a cause under the act of 1833; the petition reciting:

"And the said defendants further representing that in the defense of said suit or prosecution they claim right, authority, and title to do all the acts which have been done by them, and all the acts which they intend to do in the premises, under a revenue law of the United States, to wit, under the second section of an act of Congress approved July 7, 1838, entitled 'An act to establish certain post routes and to discontinue others,' and under other revenue laws of the United States."

Mr. Justice Curtis, in denying the petition, said:

"Having granted the right of removal in a case where the act complained of was done under or by color of the revenue laws of the United States—in other words, when there is a question to be tried, whether a justification or excuse can be made out under those laws—and having provided for a petition to be filed showing 'the nature of such suit of prosecution,' the inference is that its nature must be shown for the purpose of determining whether it be a case the removal of which is authorized. And, if so, the petition must show a case of such a nature that there is to be tried in it a justification or excuse in some way arising under the revenue laws of the United States. * * * *It is not enough that the petition should show that a certain suit or prosecution has been commenced against him and then should allege that he intends to rely upon some revenue law of the United States in his defense. He must so far exhibit the nature of the case, including not only the grounds of the claim or complaint, but his defense thereto, that upon the facts it may appear that some material question may arise under those laws. Otherwise the petition would not state a case for removal, but only the request of the petitioner and his opinion and that of his counsel that he had such a case. I do not think the just interpretation of the act authorizes a writ of certiorari upon such a statement of the mere opinion of the petitioner and his counsel.* In compliance with the requirement of the statute to state the nature of the case, facts, and not merely opinions or conclusions of law, should be set forth, so that it may appear whether in judgment of law such a case exists as enables the petitioner to call for a removal." (The italics are mine.)

A reference to the pleadings in this case, the declaration, as well as the petition for certiorari, as set out in the statement of facts preceding this opinion, will show that they are within the objections so distinctly stated by Mr. Justice Curtis.

In reaching these conclusions, the court is not unmindful of the distinction which may be made between "revenue acts" and "bills for raising revenue," as that term is used in section 7, art. 1, of the Constitution, but does not deem it necessary to pass upon that question. All that is decided herein is that this action, as it appears from the pleadings, the plaintiff's petition, and the defendant's petition for the writ of certiorari, is not against these defendants as persons "acting by authority of any revenue law of the United States or acting under or by authority of any such officer on account of any act done under color of his office, or of any such law, or on account of any right, title or authority claimed by such officer or other person under any such law," within the meaning of the provisions of section 643, Rev. St. (U. S. Comp. St. 1901, p. 521).

The motion to quash the writ of certiorari must be sustained.