**UNITED STATES of America,**
**Appellant,**

v.

**Guy Arthur CATES, Jr., Defendant-**
**Appellee.**

**No. 73–1261.**

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1973.

Decided Jan. 8, 1974.

Peter Mills, U. S. Atty., with whom
Kevin M. Cuddy, Asst. U. S. Atty., was
on brief, for appellant.

Paul F. Zendzian, Bangor, Maine, by
appointment of the Court, for appellee.

Before ALDRICH, McENTEE and
CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Cates was indicted[1] by a federal grand jury impanelled in and drawn exclusively from the Southern Division of the District of Maine. The indictment specified that the criminal violation occurred in the Northern Division of the District of Maine. After arraignment in the Northern Division, Cates moved to dismiss the indictment because of alleged non-compliance in the assembling of the grand jury with the laws and constitution of the United States. Cates asserted that, because of intentional and systematic exclusion of Northern Division residents, the grand jurors were not selected from a fair cross section of the community either in the division wherein the court convened or in the district as a whole. The court, after hearing, dismissed the indictment.

The decision below rests on the court's interpretation of the Declaration of Policy in the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, that

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes"

and on its interpretation of the Declaration of Policy in the plan, adopted pursuant to 28 U.S.C. § 1863, for the random selection of grand and petit jurors for service in the two statutory divisions, 28 U.S.C. § 99, of the District of Maine:

"It is the policy of this Court that all litigants entitled to trial by jury in each Division of this District shall have the right to grand and petit juries selected at random from a fair cross-section of the community in that Division."

The court, in effect, construed the statutory language "wherein the court convenes" to mean "wherein the trial court convenes". Under that interpretation, grand as well as petit jurors would have to come from a fair cross section of either the entire district or else the division wherein the trial court convened. The court seems also to have assumed that the Act required the trial court to convene not only in the district[2] but also in the division wherein the offense occurred. Since the indictment handed down against Cates violated both formulae, it was dismissed.

While the court's interpretation was a possible one, it is not the only reading comporting with the statutory language. Courts convene for the purpose of impanelling grand juries as well as conducting trials. In multi-judge districts, the judge to whom the grand jury reports is often different from the judge before whom the trial of a returned indictment is held. We hold that the statute means no more than that when the court convenes to impanel a grand jury, the grand jurors shall be drawn from the district or surrounding division, and that when later the trial court convenes —perhaps in a different division—the petit jurors must come either from the district or from the division wherein the court is then convened.

There is no hint in the statutory history that the Jury Selection Act was intended to do more than provide improved judicial machinery so that grand and petit jurors would be selected at random by the use of objective qualification criteria to ensure a representative cross section of the district or division in which the grand or petit jury sits.[3]

---

1. For failure to submit to induction, in violation of 50 U.S.C. App. § 462.

2. *See* U.S.Const. Amend. VI: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . ."

3. *See* Judicial Conference of the United States, Report of the Committee on the Operation of the Jury System, 42 F.R.D. 353 (1967); 1968 U.S.C. Cong. & Ad.News p. 1792; 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 2.02 (2d ed. 1970).

Congress sought to eliminate the evil of discrimination, primarily racial, by the requirement that names of randomly selected prospective jurors be placed in a jury wheel from which jurors would then be randomly drawn. 28 U.S.C. §§ 1863(b)(3), 1864. *See* United States v. Matthews, 350 F.Supp. 1103 (D.Del. 1972). The district judge in the instant case, himself a member of the Judicial Conference which drafted the Jury Selection Act and, therefore, very familiar with its background, stated that the principal objective was to eliminate discrimination and that the statutory history would indicate "that there was no specific discussion or consideration given to this problem we are faced with right now. I am confident of that."

A venue requirement for grand juries which return indictments within a state divided into divisions was most likely not discussed because it would be irrelevant to the purpose of guaranteeing random selection of jurors wherever the court convenes. Selecting jurors where the court happens to convene is a matter quite apart from deciding whether it may convene at separate places for indictment and for trial.

■ The district court's interpretation of 28 U.S.C. § 1861 seems particularly questionable as it would mean that Congress was, in practical effect, altering and enlarging the federal criminal venue statute, 18 U.S.C. § 3232 incorporating Fed.R.Crim.P. 18. There is no specific criminal venue requirement for grand juries. Until 1966, Rule 18 required prosecutions (trials) to be held within the division where the offense had been committed. The Committee Note stated that it was intended to sanction the continuance of the prevailing practice "of impaneling a grand jury for the entire district at a session in some

division and of distributing the indictments among the divisions in which the offenses were committed," a practice which had been approved in Salinger v. Loisel, 265 U.S. 224, 237, 44 S.Ct. 519, 68 L.Ed. 989 (1924). 8 J. Moore, Federal Practice ¶ 18.01, at 18–2 (2d ed. 1973). At the very least this indicates that before the Jury Selection Act, the court was plainly understood to convene twice: once when the grand jury was impanelled and once when the trial occurred. In 1966 Rule 18 was amended so that a trial must occur in the district in which the offense was committed but need no longer be in the division. Instead, "[t]he court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses." The amendment was designed to avoid administrative hardship and undue delay in the disposition of criminal cases, particularly in districts such as Maine, in which there is only a single district court judge. 8 Moore, *supra* at 18–5. The amendment makes it quite clear that in fixing the place of trial the court may disregard the division where the crime was committed. The change brings the venue rule within the minimum required by the Sixth Amendment.[4]

■ Under Rule 18, trials may now be had in the same division where the indictment was handed down, which may or may not be the division where the offense occurred, or the indictment and trial may each or both occur in different divisions. The Committee Note to the Amendment does not reflect any desire for uniformity; grand jury indictments are, in fact, not mentioned at all in the Note to the revised rule. *Id.* at 18—5–6. If the Jury Selection Act means that the court convenes only once and that convening must be where the offense was

---

4. There is no constitutional right to trial within a particular division. *See* United States v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946); Barrett v. United States, 169 U.S. 218, 18 S.Ct. 327, 42

L.Ed. 723 (1898); Franklin v. United States, 384 F.2d 377 (5th Cir. 1967), cert. denied 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed. 2d 1147 (1968); McNealy v. Johnston, 100 F.2d 280 (9th Cir. 1938).

committed, it would have conflicted with the newly amended federal venue statute. Even if the Jury Selection Act means only that both trial and indictment must occur in the same division irrespective of where the offense occurred, it would substantially amend Rule 18 by tying the trial to the place of indictment rather than to the convenience of the defendant and the witnesses, and would advance no apparent legislative purpose or social policy associated with the Act.

■■ That the grand jurors who returned Cates' indictment were all drawn from one division rather than district-wide is, of course, not prohibited by the Act which guarantees a random cross section in either the "district *or* division". [Emphasis added]. Although *Salinger, supra,* noted that the prevailing practice at the time was to draw grand jurors from throughout the district to sit in one division, its holding that indictments do not have to be in the same division where the offense occurred does not rest on this practice. A defendant indicted for an offense by grand jurors drawn all from one division is an approved practice. *See* United States v. Grayson, 416 F.2d 1073 (5th Cir. 1969), cert. denied 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753 (1970); Marvel v. Zerbst, 83 F.2d 974, 977 (10th Cir.), aff'd 299 U.S. 518, 57 S.Ct. 311, 81 L.Ed. 382 (1936). *Contra,* United States v. Beaugh, 2 F.2d 378 (W.D.La. 1924). Likewise, a petit jury may be drawn constitutionally from only one division and not the whole district. *See* Ruthenberg v. United States, 245 U.S. 480, 38 S.Ct. 168, 62 L.Ed. 414 (1918).

In light of the legislative purpose, statutory history, and Rule 18, we are unable to construe 28 U.S.C. § 1861 oth-erwise than as requiring only that when the court convenes in a division for a sitting of the grand jury, the grand jurors must be randomly (and in other respects appropriately) selected from that division. There is no requirement that they must come from the same division where a trial is later to take place or where the offense was committed. Since Cates was indicted by a grand jury appropriately selected from the Southern Division his indictment does not contravene the Act.

Our discussion has so far related to the statute, 28 U.S.C. § 1861. The wording of the Declaration of Policy in the Maine plan is more troublesome. Its language can be read as assuming that some litigants may be "entitled" to trial in a particular division of Maine and that both the grand and petit jurors must be drawn only from that division. However, as we have shown, the Jury Selection Act, Rule 18, and the constitution afforded a criminal defendant no such entitlement, nor—in any specific way—does the plan itself.[5] In the absence, either within the plan or elsewhere, of some source delineating such an entitlement, we decline to read the passing reference to "entitlement" as enunciating new local venue requirements. The sentence is most simply read as an effort to tailor the same policy language found in 28 U.S.C. § 1861 to a local plan which, rather than being district-wide, is based upon divisions. If more was intended, "it is but reasonable that that intention would have been expressed in apt terms . . ." *Salinger, supra,* 265 U.S. at 237, 44 S.Ct. at 524. Certainly the general reference to litigants "entitled" to trial within a division falls far short of specifying that a criminal defendant committing an of-

5. We *do not reach* the question whether the Jury Selection Act itself authorizes the incorporation of express criminal venue requirements as part of a local plan. *See* 28 U.S.C. § 1863(a). Plans are to afford "a significant measure of flexibility so that localities may adjust the administration of jury selection to their particular needs." 1968 U.S.Code Cong. & Ad.News p. 1799. The legislative history shows a concern for local convenience, such as transportation and attendance needs, exclusively in *juror* selection.

fense within a division is to be entitled to indictment therein.[6]

In declining to construe the language of the plan as establishing a local venue rule, we do not intimate that the district court is without authority to establish practices and rules dividing up cases between divisions. Indeed, because of its undoubted authority to do so, we would normally defer to the district court's interpretation were it not important to distinguish between those matters which are formally part of a plan promulgated under the Jury Selection Act and those which are in exercise of the court's supervisory powers. Breaches of the former may confer rights upon litigants beyond those flowing from occasional departures from a court's own administrative practices. *Cf.* 28 U.S.C. § 1867(a). We are unwilling to saddle the District of Maine unnecessarily with the consequences of reading such a requirement into its plan.[7]

In the exercise of its supervisory power, the district court may allocate cases between divisions. It may customarily fix the indictment and trial of Northern Division offenses in that Division. Moreover, it may modify the plan, *see* 28 U.S.C. § 1863(a), to ensure a broader base of jurors or to avoid any systematic non-use of the Northern Division for indictments—such as by providing for district-wide selection of grand jurors. We hold merely that neither 28 U.S.C. § 1861 nor the Maine plan are to be read as declaring a criminal venue requirement which renders Cates' indictment invalid.

Reversed.

BAILEY ALDRICH, Senior Circuit Judge (concurring).

I am entirely content with the court's opinion, but since it makes reference to individuals, I would like to add that neither as a then member of the Judicial Conference, nor as an approver of the Maine Jury Plan, did I have any thought that there was an intent to affect venue. I thought of no objective except the fairness and randomness of selection, and even there geography played a relatively minor part. Thus in Massachusetts, which is a single district, with no statutory divisions, the Act permitted, and the Massachusetts Plan took advantage of, geographical parameters. 28 U.S.C. §§ 1863(b)(3), 1869(e). Accordingly, a defendant charged with having committed an offense in Springfield, could be both indicted and tried by juries empanelled in Boston, none of whose members resided west of Worcester County, even though the court might, had convenience dictated, have chosen to sit in Springfield, in which case a western domiciled jury would have sat. Apart from any requirement in the Jury Act a Maine defendant could be tried in the division other than where his offense occurred. F.R.Crim.P. 18; United States v. O'Clair, 1 Cir., 1971, 451 F.2d 485, 486 n. 2, cert. denied 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252; United States v. Florence, 4 Cir., 1972, 456 F.2d 46 (Selective Service). It would be ironic if that Act, which plainly permits the Massachusetts result aforementioned, even though Massachusetts has six district judges, should lead to a requirement that the single Maine district judge jump back and forth from one division to the other simply because Maine is divided into two divisions for purposes of convenience in no way previously thought connected with jury selection. I do not read the language, either of the Act, or of the Maine Plan, as requiring such a result.

---

6. For the last five years the United States Attorney has been operating, apparently without protest, under a non-restrictive interpretation, a practice we recognized in United States v. Cabral, 475 F.2d 715, 718, n. 2 (1st Cir. 1973).

7. The district court expressed its own qualms by stating (with respect to the matter in issue) that the plan was "perhaps foolishly" adopted.