## WEINBERG v. UNITED STATES.
### No. 206.

Circuit Court of Appeals, Second Circuit.
March 11, 1942.

David Haar, of New York City, for appellant.

Edward J. Behrens, Asst. U. S. Atty., of New York City (Mathias F. Correa, U. S. Atty., of New York City, on the brief), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, C. E., Circuit Judge.

This appeal raises the question as to the legality of a search and seizure of property in the Southern District of New York when made pursuant to an order of the District Court of the United States for the Eastern District of Michigan. On argument, however, various jurisdictional objections were raised which tend to overshadow the relatively simple problem as to the seizure itself. That seizure we think was clearly illegal.

So far as the record discloses, it appears that several persons, including Jacob and William Weinberg, were charged in the Eastern District of Michigan with conspiring to transport stolen property in interstate commerce, in violation of 18 U.S. C.A. § 415. Subsequently a district judge for that district issued an order designating "J. Edgar Hoover, Director of the Federal Bureau of Investigation, Department of Justice, and his duly authorized and designated representatives and Special Agents" officers of "this Court," and directing them to seize all the "Ford, Lincoln-Zephyr and/or Mercury automobile parts now located in and upon certain premises." Among the listed premises was "That portion of a building at 653 Eleventh Avenue, New York City, New York, oc-

cupied by Weinberg & Company, which company is owned and operated by the defendants, Jacob Weinberg and William Weinberg."

Two special agents of the Federal Bureau of Investigation, armed with a photostatic copy of the above order, went to 653 Eleventh Avenue, New York City, and proceeded to remove numerous auto parts. They were not deterred by the fact that the Universal Automotive Parts, Inc., not named in the Michigan order, also occupied the premises. Nor did they pay attention to the protests of Phoebe Weinberg, petitioner herein and sister of Jacob and William, against a search without a search warrant. Instead, they removed the Ford parts and, according to the affidavit of one of the special agents, these parts were taken "to their ultimate destination." The record does not disclose where they are now.

According to petitioner's affidavit, which has not been questioned in the record, there was then pending in the Southern District of New York a proceeding to remove to the Eastern District of Michigan several of the defendants named in the Michigan charge, including Jacob and William Weinberg. After the seizure, Phoebe Weinberg petitioned for return of the seized property. She asserted ownership of the property by herself and Jacob Weinberg as a partnership and also by the corporation above named, of which she was secretary and treasurer. It is not clear whether she considered her petition ancillary to the removal proceeding or an independent action. Certainly the show-cause order directed to the United States Attorney for the Southern District of New York is styled as part of the removal proceeding. After hearing, the court below denied the petition for return of the property without prejudice to the institution of proceedings in the District Court of the United States for the Eastern District of Michigan.

■ The United States Attorney makes no defense on the merits. We do not see how he can. With very few exceptions, United States district judges possess no extraterritorial jurisdiction. Toland v. Sprague, 12 Pet. 300, 328–330, 9 L.Ed. 1093; Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 377, 57 S.Ct. 273, 81 L.Ed. 289; Barrett v. United States, 169 U.S. 218, 221, 18 S.Ct. 327, 42 L.Ed. 723; Mitchell v. Dexter, 1 Cir., 244 F.

926, 930; Primos Chemical Co. v. Fulton Steel Corp., D.C.N.D.N.Y., 254 F. 454, 458; Horn v. Pere Marquette R. Co., C.C.E.D.Mich., 151 F. 626, 631; Evans, Problems in the Enforcement of Federal Judgments, 4 Mo.L.Rev. 19, 37-38. In the Horn case, Judge, later Mr. Justice, Lurton observed: "Federal courts of different states are undoubtedly foreign courts as to each other in as full sense as are state courts of different jurisdictions." It is conceded that Congress may extend a district court's geographical jurisdiction in civil cases, Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 683, 55 S.Ct. 595, 79 L.Ed. 1110; and this has been done in a limited number of cases, such as those involving restraint of trade and insurance interpleader. Nothing has been attempted, however, in criminal matters, presumably because of the limitations of the Constitution, which by Art. III, § 2, requires trial of all crimes in the state, and by the Sixth Amendment, in the state and district where committed. Though these provisions refer only to the trial, no one has yet attempted to separate process from trial and make the former extend beyond the district. Hence, even though the statute, 18 U.S.C.A. § 611, authorizing the issuance of search warrants, does not contain an express limitation of the district court's power to its own district, that seems clearly understood, in view of the constitutional provisions and the general rule of territorial limitation. We, therefore, cannot hold silence to mean that search warrants may be used anywhere in the country. See Mitchell v. Dexter, supra, for application of the rule to arrest without the district for criminal contempt.

■ Even had the order in question been issued by the district court here, it would still be invalid. The Fourth Amendment and the legislation governing search warrants, 18 U.S.C.A. §§ 611–625, circumscribe the freedom with which government officers may search and seize. This protection of the citizen would be frittered away if a district judge, by simply designating a law enforcement agency as officers of his court, could obviate the necessity of following the strict procedure for obtaining a warrant. To make a search in the Southern District of New York, it is necessary to obtain a warrant from the proper official having authority there, "upon probable cause, supported by affidavit,

naming or describing the person and particularly describing the property and the place to be searched," 18 U.S.C.A. §§ 611, 613; and the warrant itself must state the probable cause for its issue, and the names of the persons whose affidavits were taken in support of it, ibid., § 616, and "particularly describing the place to be searched, and the persons or things to be seized." Amendment IV. This document, described as an "Order Impounding Certain Evidence," does none of these things. We can find no warrant for it in law, nor have we been cited to any. Other difficulties also appear, such as lack of inventory or receipt for the property, or of hearing thereafter. 18 U.S.C.A. §§ 622–626. The gross illegality of the whole proceeding is obvious.

But as noted, the United States Attorney does not address himself to the validity of the search. Instead, he raises jurisdictional questions. These questions all stem from the rule that summary jurisdiction in cases of this sort rests on the "fact that the person in possession is an officer of the court." Cogen v. United States, 278 U.S. 221, 225, 49 S.Ct. 118, 120, 73 L.Ed. 275. It is for this reason, presumably, that the judge below left petitioner to her remedies in the Michigan federal court. The district judge in Michigan could discipline the special agents, for he has made them officers of his court. For the same jurisdictional reason the United States Attorney, an officer of the Southern District of New York, questions his own connection with the case. He relies on Weinstein v. Attorney General of the United States, 2 Cir., 271 F. 673, which held that the United States Attorney is not responsible for an illegal search and seizure by an executive officer acting for an executive department, and that in such a case the United States Attorney could not be required to return papers not in his possession. But within the spirit of that decision and the direct holding of Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374—where papers illegally seized in a criminal proceeding before a United States Commissioner were ordered returned summarily—we think the proceeding pending below for the removal of the accused from this district gave sufficient authority for an order to return the property. And if it did, we ought not to force petitioner to go to Michigan to seek her property illegally taken from her here.

As petitioner's affidavit shows, the arrest of the two accused was prior to the search and seizure, and the proceedings for removal had been adjourned, at the request of the United States Attorney, to a date several days later than that of the affidavit, "which proceedings still remain undetermined." The United States Attorney is therefore engaged in conducting that action. As an officer of the court he obviously cannot and should not be disciplined for this illegal seizure, since he was not a party to it. But he can be ordered to obtain possession of the seized property and to return it to petitioner for her use. Defendants are always entitled to offer evidence in removal hearings. United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501, affirming 2 Cir., 73 F.2d 274; Tinsley v. Treat, 205 U.S. 20, 27 S.Ct. 430, 51 L.Ed. 689; United States ex rel. Brody v. Hecht, 2 Cir., 11 F.2d 128. And this evidence is most relevant to the issue.

True, as the cases just cited show, the United States Attorney usually relies on the indictment to show probable cause in the first instance; and though we are not even informed of any actual indictment here, it may well be that he will not himself plan to use the evidence at this hearing. But if the hearing on removal is to be full and fair, important evidence cannot be spirited away and withheld from the accused. Such would constitute a fraud on the court which may be prevented. In 1827, in Ex parte Craig, C.C.E.D. Pa., 6 Fed.Cas. 710, No. 3,321, Mr. Justice Bushrod Washington summarily ordered a committing officer to return to an accused money taken from him. The court observed (supra, 6 Fed.Cas. at page 711, No. 3,321): "The constitution, by one of its amendments, has secured to every person under a criminal prosecution, the right to have compulsory process for obtaining witnesses in his favour, and the privilege of having the assistance of counsel to defend him. But what would these securities avail the accused, if a judicial officer, or any other officer of the court may legally deprive him of the means of obtaining his witnesses, and of employing the counsel in whom his confidence is placed; by detaining the money found upon his person, which, in many cases, may be his all? To turn the prisoner over to his ordinary remedy, by suit against the officer, which might not be decided until long after his fate in the criminal prosecution had been

fixed, would be a mockery of justice, and a reproach to the law." It also said that in a direct action against the officer the prisoner could not fail, and that, as to the summary mode of proceeding, while no precedent had been cited, "I shall not fear to be the first judge (if I am so), to make the precedent." Such healthy vigor in requiring lawful conduct of law-enforcing officials has lost none of its force under the precedents of the present day which we have cited.

The United States Attorney may assert that he has no control over the Federal Bureau of Investigation, and that he cannot compel its agents to return the property. We think such an argument not well founded. Aside from the work of the criminal identification division, the Federal Bureau of Investigation is by statute only an organization of "officials who shall be vested with the authority necessary" "for the detection and prosecution of crimes against the United States." 5 U.S.C.A. § 300. And United States Attorneys are charged with the duty of prosecuting all "delinquents for crimes" within their respective districts. 28 U.S.C.A. § 485. They are "vested with complete control over the proceedings, in the exercise of sound discretion." Deutsch v. Aderhold, 5 Cir., 80 F.2d 677, 678. Clearly, special agents generally operate to aid the United States Attorneys. Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 139, 118 A.L.R. 1440, certiorari denied 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414, rehearing denied 305 U.S. 673, 59 S.Ct. 242, 83 L.Ed. 436; 307 U.S. 651, 59 S.Ct. 1035, 83 L.Ed. 1529, 1530; cf. 5 U.S.C.A. § 300a. The over-all administrative organization of the Department of Justice, therefore, achieves the same result as that in the Go-Bart case, supra, where the Court relied on a statutory provision requiring prohibition agents to make seized evidence available to the United States Attorney, and concluded that the United States Attorney could not argue that he had no control over the prohibition agents. Moreover, the special agents here seized the auto parts for use in a prosecution which cannot be carried through successfully unless the pending removal proceeding is successful. Consequently the auto parts are as important in the removal hearing as they are in the final prosecution.

Essentially the same answer applies to the contention that the federal agents did not seize the property for use in the pending removal proceeding. In fact their affidavits make no such claim, but merely assert that they were acting to carry out the provisions of the Michigan order. That order was directed to procuring evidence for a criminal proceeding against, among others, the two Weinberg brothers. As to them, unless the initial step of removal could be achieved, there would be no further proceeding. The agents therefore could not with propriety deny that the evidence which was the very basis of the charge was not an essential to the removal proceeding. Of course, the process of subpoena could have been employed to bring the evidence before the court, 28 U.S.C.A. § 377; American Lithographic Co. v. Werckmeister, 221 U.S. 603, 31 S.Ct. 676, 55 L.Ed. 873; an order to the prosecution's lawyer, an officer of the local court, is merely a more natural and direct way of achieving the same end under the Go-Bart case, supra. We think, therefore, that the United States Attorney should see to it that the property is made available to him for return to the owners, and that he should report to the court below the steps he shall have taken to that end. We do not anticipate any reluctance upon the part of the agents to comply with such a demand from him, in view of the manifest illegality of the seizure and the penalties, not only herein, but in civil or criminal proceedings elsewhere to which such a course might lead. We may add that, of course, nothing said herein will preclude the Attorney from initiating such proper steps for the lawful seizure of property in the premises as he may feel advised to take in the execution of his official duties.

We have also considered other possible or potential objections to the procedure here, and find none to be a bar. That the federal officers, by relinquishing custody of the property, may open themselves to disciplinary proceedings from the Court in Michigan, of which they are now temporarily officers, does not seem to us likely. Undoubtedly petitioner could replevy her property or seek damages for its conversion directly from these officers, and the cloak of officialdom would not have protected them as individuals acting illegally. Buck v. Colbath, 3 Wall. 334, 70 U.S. 334, 18 L.Ed. 257; Mitchell v. Harmony, 13 How. 115, 54 U.S. 115, 14 L.Ed. 75. So, an official cloak here cannot hide

an illegal act, or properly or justly open the official to criticism or discipline for measures taken to correct the wrong. Petitioner not being one of the accused, the proceeding here is final and appealable, even if an indictment has been had in Michigan, Go-Bart Importing Co. v. United States, supra, 282 U.S. at page 356, 51 S.Ct. 153, 75 L.Ed. 374, and thus is clearly not within the recent prohibition against any appeal of an order in a habeas corpus proceeding to test the validity of a warrant of removal. 28 U.S.C.A. § 463(a); cf. United States ex rel. McDermott v. Jaeger, March 10, 1942, 2 Cir., 126 F.2d 1002. Petitioner has an interest as one of the owners of the property; whether or not others should properly have been joined with her (or should now be added, Federal Rules of Civil Procedure, rule 21, 28 U.S.C.A. following section 723c) is a question not raised before us.

The order is therefore reversed, and the cause is remanded for further proceedings in conformity with this opinion.