**PARTS MFG. CORPORATION v. LYNCH,**
**Sp. Agent, Federal Bureau of**
**Investigation, et al.**

District Court, S. D. New York.

June 1, 1942.

Simpson, Brady, Noonan & Kaufman, of New York City (Irving R. Kaufman and Gregory F. Noonan, both of New York City, of counsel), for petitioner.

Mathias F. Correa, U. S. Atty. for Southern District of New York, of New York City (Edward J. Behrens, of New York City, of counsel), for respondents.

HULBERT, District Judge.

In this special proceeding an order is sought: (1) Quashing a search warrant issued out of this court on April 13, 1942, and (2) requiring the return of property seized pursuant thereto.

No request was made for the taking of any testimony upon the hearing of the petition but the papers before me do not present any substantial conflict of fact.

The petitioner, Parts Manufacturing Corporation, of 311 West 66th Street, Borough of Manhattan, City and State of New York, is engaged in the business of manufacturing and selling automotive parts and accessories for Ford, Chevrolet and Plymouth automobiles and in addition thereto purchased parts from over 200 dealers who are engaged as jobbers, manufacturers, distributors, retailers, wreckers and salvagers of automotive products for the automobiles mentioned.

Sol Laks, President, and Charles Cohen, Secretary of the petitioner, have been arrested in this District, and proceedings for their removal are pending, undetermined, to answer a one count indictment filed in the United States District Court for the Eastern District of Michigan, Southern Division, charging Laks and Cohen and about 40 other defendants with conspiracy to transport in interstate commerce stolen parts intended for use in the assembly of, or as replacements in automobiles manufactured by the Ford Motor Company.

On December 8, 1941 an order was made by a United States Judge in Detroit, Michigan, designating the Director of the Federal Bureau of Investigation, Department of Justice, and his duly authorized representatives and Special Agents as officers of said court and authorizing them to take into their possession and control all of the "genuine Ford, Lincoln-Zephyr and/or Mercury automobile parts now located in and upon certain premises" designated by street and number in New York City, New York.

On December 11, 1941, and subsequent to the arrest of Cohen, agents of the Federal Bureau of Investigation served said order upon the petitioner and searched and seized upon its premises, specified in said order, and removed therefrom to Detroit,

Michigan, certain merchandise. In pursuance of the same order, the agents of the Federal Bureau of Investigation also searched vaults Nos. 464 and 468 of the Metropolitan Fireproof Warehouse, at 475 Amsterdam Avenue, New York, New York, specified in said order, and seized the merchandise therein contained which had been stored therein by the petitioner and removed the same to Detroit, Michigan.

Also listed among the premises to be searched in said order was that portion of a building at 653 Eleventh Avenue, New York City, New York, occupied by Weinberg & Company.

After that search and seizure had been executed and a motion made in this court for the suppression and return of the Weinberg merchandise had been denied, an appeal was taken to the Circuit Court of Appeals, Second Circuit.

In an opinion filed March 11, 1942, Weinberg v. United States, 2 Cir., 126 F.2d 1004, the said order dated December 8, 1941, was declared null and void and an order was entered and filed in the office of the clerk of this court which included a direction for the return to the petitioner, on or before April 2, 1942, of the property unlawfully taken from its possession.

In compliance with this order, late in the afternoon of April 2, 1942, representatives of the Federal Bureau of Investigation appeared at the premises of the petitioner and began to unload merchandise from a truck. Simultaneously, a Deputy Sheriff of the County of New York appeared and then and there served upon the petitioner a writ of replevin, together with a bond in the sum of $30,000, in a suit commenced in the Supreme Court, New York County, by the Ford Motor Company against Parts Manufacturing Corporation. The writ of replevin was based upon an affidavit of one of the attorneys for the Ford Motor Company, in which he alleged that he had conferred with Special Agents of the Federal Bureau of Investigation on March 31, 1942, and had received from them a list of the chattels claimed to have been stolen from the Ford Motor Company and in the possession of the petitioner.

Thereafter, and in conformity with the provisions of the New York Civil Practice Act, the Parts Manufacturing Corporation took proceedings to reclaim the chattels thus seized on the writ of replevin and posted a bond in the sum of $30,000 and gave notice of justification of sureties, returnable in the Supreme Court, New York County on April 13, 1942, at 2 p.m.

After the sureties were justified, arrangements were made for the return to the premises of the petitioner of the merchandise in question which the Sheriff of New York County had, in executing the writ of replevin, stored at the Centre Storage Warehouse, 465 East 10th Street, New York, New York.

Counsel for the petitioner communicated with Mr. T. P. Lynch, Special Agent of the Federal Bureau of Investigation, and invited him to be present when the Sheriff released the property to the petitioner so that the same might be checked in his presence. Mr. Lynch attended this meeting and served the search warrant dated April 13, 1942, and seized the property which had been replevined and reclaimed.

The question thus presented is whether the evidence upon which the accused warrant of search and seizure is based, in part at least, stems from "the poisonous tree."

Circuit Judge Clark, writing for the Court in Weinberg v. United States, 2 Cir., 126 F.2d 1004, at page 1008, said: "We do not anticipate any reluctance upon the part of the agents to comply with such a demand from him, in view of the manifest illegality of the seizure and the penalties, not only herein, but in civil or criminal proceedings elsewhere to which such a course might lead. We may add that, of course, nothing said herein will preclude the Attorney from initiating such proper steps for the lawful seizure of property in the premises as he may feel advised to take in the execution of his official duties."

Mr. Behrens, an Assistant on the staff of the United States Attorney's Office for the Southern District of New York, conceiving that the government was not restrained in making a determination whether the National Stolen Property Act, 18 U.S. C.A. § 413 et seq., was violated, applied for the warrant of search and seizure granted April 13, 1942. In his petition he asserts, first of all, that the information sought has no connection with the prosecution of the case in Michigan, and furthermore, will not be used in the removal proceedings now pending in this district in connection therewith. While it appears to be true that Mr. Behrens inspected the merchandise previously seized after it had been returned, and replevined, and while in the custody of the Sheriff of New York County, preparatory to his application, his petition and

supporting affidavits tend to show the commission of a crime for which prosecution may be laid in this. district.

Mr. Behrens avers that the merchandise which he examined on April 11, 1942, consisted of a pile of cartons and wooden boxes known as Lot No. 179-A about 6 feet high, 11 feet deep and 15 feet long; he selected at random from some 364 cardboard cartons and 27 wooden boxes, a number of packages, the contents of which appeared to be Ford, Lincoln Zephyr and Mercury automobile parts such as connecting rods, insert bearings, distributor breaker arm assemblies, shackle bolts, distributor breaker plates, etc., and that upon practically all of the large boxes and cartons there were either stencils showing that the boxes and cartons had originally been shipped to Ford Motor Company in Michigan from the manufacturer of the parts, or labels showing such original shipment. Many of the labels contained the actual Ford order number. Some labels showed shipments from Holley Carburetor Company or American Bosch Corporation or E. R. Mallory Company, Inc., to the Ford Motor Company in Detroit; and it appeared to Mr. Behrens that these labels were or had been covered over at one time by the use of glued paper and there was no shipping label on any single box which he saw from any one to Parts Manufacturing Corporation.

It also appeared to him that the labels had been cut off from some of the cartons by use of a knife or other sharp instrument, while on many other boxes and cartons an attempt had been made by someone to obliterate the Ford name with crayon or black paint.

In Mr. Behrens' presence one Sol Rimar, who also made a supporting affidavit, identified a great many cartons and boxes as stolen merchandise which he had shipped from Detroit, Michigan, to Parts Manufacturing Corporation in New York.

From 1938 to about November, 1941, Rimar was engaged in business in Detroit under the trade name of Motor Supply Company and within that period of time he avers that he sold and shipped various Ford parts to the Parts Manufacturing Corporation in New York, usually through the trucking firms of Roadway Transit Company, Kramer Brothers and Universal Carloading Company, pursuant to arrangements which he made with Sol Laks. Rimar never rendered any bills for this merchandise but would usually call at the office of Parts Manufacturing Company in New York in person and receive payment (by check). He further says that many of the cases which he shipped originally bore the Ford name which had been pasted over, and that all of these parts which he sold had been stolen from the Ford Motor Company to his knowledge and that of the Parts Manufacturing Corporation. Attached to the affidavit of Mr. Rimar is an itemized list of some of the larger sales of such parts made by him to the petitioner herein.

Having been present at the time of the inspection made by Mr. Behrens, Rimar says that from one of the boxes he took a small piece of paper which was a part of a label he had affixed to the box at the time of shipment and on which his handwriting appeared and by that means he was able to identify that particular box as one of those containing property stolen from Ford and sold and shipped by him to the petitioner herein.

In a supporting affidavit, John Herman states that for 15 months previous to November 1941, he was a partner of Sol Lewis, doing business under the name of J. & S. Sales Company, organized primarily for the purpose of salvaging automobile accessory parts, but that for about a year previous to November 1941, said partnership sold various Ford parts to the petitioner; that the dealings in the sale of these parts were had with Laks in Detroit and in New York, and he sets forth an itemized list of some of such sales of parts which he states were purchased from employees of the Ford Motor Company "directly or indirectly" and which parts the employees of the Ford Motor Company had obtained unlawfully, by theft or embezzlement, and such merchandise was shipped from Michigan to Parts Manufacturing Corporation, 311 West 66th Street, New York, N. Y., either through Kramer Bros., or Erie Freight Lines. About 85% of the shipments were made under the fictitious name of "R. Allen."

In a supporting affidavit, Sol Lewis reiterated the truth of the statements made by Herman.

Edmund J. Kennedy, a Special Agent of the Federal Bureau of Investigation, Department of Justice, made a supporting affidavit in which he alleged that between November 1 and November 18, 1941, in the course of his official duties, he made an investigation of books, records and docu-

858

ments of the Roadway Transit Company, Kramer Bros., Freight Lines and the Universal Carloading Company, in their respective Detroit offices and found that the records of the Roadway Transit showed approximately 40 shipments of merchandise from Motor Supply Company, Detroit, Michigan, to Parts Manufacturing Corporation, New York, N.Y. The records of Universal Carloading Company showed that during the period of March 18, 1941 to September 20, 1941, they handled six shipments of merchandise from Motor Supply Company, Detroit, Michigan, to Parts Manufacturing Company, New York, N. Y.; that the records of Kramer Brothers Freight Lines showed a total of 18 shipments of merchandise between January 16, 1941 and August 18, 1941, from Motor Supply Company, Detroit. Michigan, to Parts Manufacturing Corporation, New York, N.Y.; the records of Kramer Brothers Freight Lines, Inc., disclosed that during the period January 18, 1941 to September 3, 1941, there were 18 shipments of merchandise from "R. Allen", Detroit, Michigan, to Parts Manufacturing Company, New York, N.Y.

A further supporting affidavit verified by Norman G. Temple, Special Agent of the Federal Bureau of Investigation, Department of Justice, sets forth that over a period of approximately seven weeks he made a check of the books, records and documents of the Ford Motor Company, limited to the period of January 1 to June 30, 1941, and further limited to about 11 classes of items that go into the manufacture of an automobile made by the Ford Motor Company. His examination was limited by reason of the fact that during the year 1941 the Ford Motor Company was purchasing approximately 90,000 items and it required about three or four days to make a complete review of any one class of items; he sets forth an analysis of his ·findings indicating the number of parts short in the stock of each class of parts checked. His spot checking revealed a total shortage in the 11 classes of parts amounting to $2,852,625.55.

I have carefully considered the cases cited in an elaborate brief prepared by counsel for the petitioner.

■ It is apparent that the United States Attorney had probable cause to believe that merchandise parts which had been stolen from the Ford Motor Company in Detroit, Michigan, had been shipped across State lines and came into the possession of Parts Manufacturing Corporation.

■ · The contention of the petitioner is that only through the inspection made by Mr. Behrens could the identity of certain parts, the right to possession of which is claimed by the petitioner, be established, and that such inspection and identification was dependent upon the seizure pursuant to the illegal order of December 8, 1941, and hence is such information thus obtained by the government so tainted that it cannot support the warrant of search and seizure now attacked?

The observation made by the learned Justice writing for the Court in United States v. Nardone, 308 U.S. 338, 341, 60 S. Ct. 266, 268, 84 L.Ed. 307, seems particularly pertinent here.

"Here, as in the Silverthorne case, the facts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used . by it' simply because it is used derivatively.. [Silverthorne Lumber Co. v. United States], 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 24 A.L.R. 1426.

"In practice this generalized statement may conceal concrete complexities. Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so. attenuated as to dissipate the taint. A sensible way of dealing with such a situation * * * ought to be within the reach of experienced trial judges. * * * This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin."

■ The property in question was in custodia legis and the facts disclosed by the attorney for the Ford Motor Company are a matter of public record in the official files of the New York County Clerk. My conclusion is that the application for the warrant of search and seizure is based upon information independently acquired. The inspection made by Behrens appears to me to be as free from taint as if it had resulted from inspection made after removal of personal effects by firemen from a burning building in their effort to salvage it, or from information derived by an insurance

company which had ascertained the facts in passing upon a claim for loss.

 Furthermore, the papers upon which the warrant of search and seizure is based, conform to the requirements of Title 18 U.S.C.A. §§ 611–625. Motion denied. Settle order on notice.